890 So.2d 322 (2004)
In re COMMITMENT OF Raymond BRANCH.
Raymond Branch, Appellant,
v.
State of Florida, Appellee.
No. 2D01-2087.
District Court of Appeal of Florida, Second District.
December 10, 2004.
*323 James Marion Moorman, Public Defender, and Deborah K. Brueckheimer, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Marilyn Muir Beccue and Janet A. McDonald, Assistant Attorneys General, Tampa, for Appellee.
VILLANTI, Judge.
Raymond Branch challenges his involuntary civil commitment as a sexually violent predator under sections 394.910-.931, Florida Statutes (2001), the Jimmy Ryce Act (the Ryce Act), on a variety of grounds. We affirm on all issues except one. Because under the specific facts of this case Branch had a due process right to be competent during the commitment hearing, we reverse and remand for a new hearing once Branch is restored to competence.
On March 20, 1995, Branch pleaded guilty to one count of sexual battery and one count of false imprisonment. He was sentenced to eight years in prison followed by four years of sex offender probation on the sexual battery charge. He was sentenced to a concurrent term of five years in prison on the false imprisonment charge. Branch was scheduled to be released from prison on March 24, 2001. On March 15, 2001, the State filed a petition to have Branch committed under the Ryce Act. The trial court entered an order finding probable cause and remanding Branch to the custody of the Department of Children and Family Services upon his release from prison. Pursuant to section 394.916(3), the trial court also appointed counsel for Branch to represent him in the Ryce Act proceedings.
Shortly thereafter, counsel moved to have Branch's competency evaluated based on his behavior in the courtroom. The trial court ordered that Branch undergo a competency and sanity evaluation to determine his competence to stand trial in the upcoming Ryce Act proceeding. This order specifically required the psychologists to use the criteria for competence contained in both Florida Rule of Criminal Procedure 3.211 and section 916.13(1)(a), Florida Statutes (2001), presumably because the Florida Rules of Civil Procedure contain no such criteria. Both psychologists who examined Branch determined that he was not competent to stand trial because his schizophrenia was not under control. Both psychologists found, among other things, that Branch's acute psychosis prevented him from assisting his counsel in any way with a defense to the allegations against him.
After reviewing these reports, the State stipulated that Branch was incompetent to proceed to trial based on the criminal standards for competence. However, the State contended that this was irrelevant because Ryce Act proceedings are civil in nature and therefore are governed by the rules of civil procedure rather than the criminal rules. Under Florida Rules of Civil Procedure 1.210(b) and 1.260, a civil trial against *324 an incompetent person may proceed as long as the trial court appoints a guardian to represent the incompetent person's interests. In response to the State's arguments, the trial court appointed a guardian ad litem to represent Branch's interests and scheduled the Ryce Act proceeding.
At the Ryce Act proceeding, the State presented the testimony of the victim of the underlying offense. The State also presented the testimony of Peter Bursten, a licensed psychologist.[1] Dr. Bursten testified that in his opinion Branch qualified as a sexually violent predator. There was no dispute that Branch had a prior conviction for a sexually violent offense. However, for Dr. Bursten to find that Branch qualified as a sexually violent predator, he also had to find that Branch had a mental abnormality sufficient to qualify him for commitment under the Ryce Act. To do this, Dr. Bursten found that Branch had engaged in a pattern of inappropriate sexual behavior by relying on various records provided to him by the State. Included among these were records from Branch's participation in a Department of Corrections' (DOC) sex offender program, during which Branch allegedly admitted to having sexual fantasies involving coercion and force. The records also included an information filed by the State in 1987 charging Branch with two counts of sexual assault and two counts of kidnaping. Finally, the records included a letter Branch's mother had written to the court in the 1980s stating that Branch had sexually assaulted his sister in 1974. Dr. Bursten admitted that he had never spoken with anyone at the DOC about the sex offender program records and had never spoken to the alleged victims of either the 1987 or 1974 assaults. He also admitted that there was no record that Branch was convicted of either of the alleged assaults.
Based solely on his review of these records, Dr. Bursten formed the opinion that Branch had a mental abnormality that qualified him as a sexually violent predator under the Ryce Act. Dr. Bursten testified that the most important factor in reaching this opinion was Branch's pattern of deviant sexual behavior, which included repeated assaults against a variety of types of victims. He found that Branch exhibited such a pattern based exclusively on the reports provided to him by the State. However, Dr. Bursten admitted that he had no knowledge as to whether the 1974 and 1987 events actually occurred, admitted that Branch had never been charged with assaulting his sister or prosecuted for the alleged 1987 offenses beyond the filing of the information, and testified that he was simply taking the reports of that behavior at face value. He subsequently testified that the 1987 incident involved Branch's allegedly sexually assaulting a known prostitute and that the charges were dismissed because the prostitute, who was on probation at the time, disappeared after making the police report. Dr. Bursten acknowledged that Branch had never had the opportunity to defend himself against the charges and that it was possible that the incidents had not occurred as reported. However, despite these deficiencies, Dr. Bursten testified that in his opinion the reports in and of themselves were sufficient to establish that Branch engaged in a pattern of deviant sexual activity and so had a mental abnormality sufficient to qualify him as a sexually violent predator.
The State then called Branch to the stand, seeking to elicit testimony from him concerning the sexual offenses he was alleged *325 to have committed and testimony concerning his comments during his DOC sex offender treatment. Over a defense objection and out of the jury's presence, Branch took the stand. He refused to take the oath and, while certain answers Branch gave appeared to be responsive to the questions asked, others were either not responsive or completely irrelevant. Branch became agitated during the course of the questioning, and his responses became increasingly bizarre[2] as questioning continued. Finally, the court stopped the questioning.
In support of his argument that he was not competent to testify, Branch then called Dr. Sesta, one of the licensed psychologists who had evaluated him for competence pursuant to the earlier order. Dr. Sesta testified that Branch was not currently competent to testify and was not currently competent to stand trial under the criminal standards. Dr. Sesta testified that Branch had been competent in the past and that, with proper medication and treatment, Branch could likely be restored to competence within approximately six months.[3]
Based on this testimony, the State then requested a continuance of the proceedings "until such time as Mr. Branch becomes competent to give testimony so that the State can call him as a witness in their case in chief and also I believe it would be in his best interest to be competent in order to participate in the proceeding." Before the defense could comment, the trial court found that Branch was disqualified from testifying as a witness because he was incapable of expressing himself in such a manner as to be understood; however, the trial court denied the State's request for a continuance.
During the State's case, Branch repeatedly objected to the admission of the hearsay testimony concerning Branch's alleged prior uncharged bad acts. Branch's counsel argued that while the hearsay might be admissible under section 394.9155, Branch had no ability to defend himself because he was incapable of assisting her in disputing these factual allegations. She pointed out that, unlike the case with a prior criminal conviction, Branch had the right to specifically dispute the factual allegations concerning the uncharged bad acts. However, he was unable to do so because of his incompetence. This not only denied Branch his due process right to present a defense, but it also denied Branch his right to counsel because she could not effectively defend him without his assistance. The trial court overruled all these objections. The jury subsequently found Branch to be a sexually violent predator, and the trial court committed him for treatment under the Ryce Act.
In this appeal, Branch contends that the trial court should not have held his Ryce Act proceeding while he was incompetent to testify and to assist in his own defense. If a right to competence during a Ryce Act proceeding exists, it must arise from one *326 of three sources  the Ryce Act itself, court rules, or the constitution. Whether such a right exists appears to be an issue of first impression in Florida.
It is undisputed that the Ryce Act itself contains no provision concerning a respondent's right to be competent during the proceedings. It is equally clear that there is no court rule giving Branch the right to be competent during his Ryce Act proceeding. Ryce Act proceedings are civil proceedings, not criminal ones. Kansas v. Hendricks, 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997); Westerheide v. State, 831 So.2d 93, 100 (Fla.2002). Thus, the criminal rules concerning a criminal defendant's competence to proceed to trial are wholly inapplicable. See Fla. R.Crim. P. 3.210, 3.211; cf. Carter v. State, 706 So.2d 873, 875 (Fla.1997) (noting that postconviction proceedings that are civil in nature are not subject to rule 3.211). Florida Rule of Civil Procedure 1.210(b) allows a civil action to proceed either by or against an incompetent person as long as the court appoints a guardian ad litem or a next friend. Because the trial court appointed a guardian ad litem to protect Branch's interests in this case, it complied with this requirement of the civil rules.
Turning to the constitution, Branch contends that holding Ryce Act proceedings while he was incompetent violated his constitutional right to due process because he could not assist his counsel in any meaningful way and so could not present a defense. "The fundamental requirement of due process is the opportunity to be heard `at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). While no Florida case has addressed whether a Ryce Act respondent has a due process right to be competent during the proceedings, we believe that under certain circumstances a respondent who is not competent is denied the opportunity to be heard in a meaningful manner. We are guided in our analysis by three Florida cases which, taken together, establish that Branch had a due process right to be competent during his Ryce Act proceedings.
In Jenkins v. State, 803 So.2d 783 (Fla. 5th DCA 2001), the court addressed the use of extensive hearsay evidence admitted against a Ryce Act respondent. Jenkins, like Branch, had one prior conviction for a sexually violent offense. Id. at 786. However, also as in this case, the State presented extensive testimony against Jenkins concerning prior uncharged bad acts that he was alleged to have committed. Id. The State presented this evidence through the testimony of various police officers who had been involved in the investigation of these uncharged bad acts. Id. at 785. "Police officers were permitted to testify from police reports, sometimes prepared by other officers, as to what out-of-court witnesses had told the police and, it appears from the nature of some of the statements, what out-of-court witnesses had told police that others had told them." Id. at 786. Moreover, testimony was presented from "`experts' whose opinions were based in large part on the police reports which contained not only hearsay but also double hearsay and, as indicated earlier, perhaps triple hearsay." Id. Because of the nature of this hearsay evidence, Jenkins had no opportunity to confront the witnesses and challenge the veracity of their testimony. Id.
In reversing the order of commitment, the court first recognized that hearsay evidence may be introduced in Ryce Act proceedings, although it may not be the sole basis for commitment and the hearsay admitted must be reliable. Id. at 785; see *327 also § 394.9155(5). The court then noted that there is a distinction between police reports which contain unchallenged and unchallengeable hearsay and police reports which relate to cases in which the respondent has pleaded or been found guilty by a jury. Jenkins, 803 So.2d at 786. The latter have sufficient indicia of reliability to be admissible against the respondent either because the respondent has admitted to the veracity of the contents of the reports or because a jury has found the reported conduct supported by the evidence. Id. The former, however, have no such indicia of reliability. Id. Because the evidence admitted against Jenkins was of the unreliable former type, the court held that its admission violated Jenkins' constitutional right to due process and required reversal of the commitment order.
This court subsequently distinguished Jenkins in Williams v. State, 841 So.2d 531 (Fla. 2d DCA 2003). In that case, the State presented experts' opinions formed in reliance on police reports concerning Williams' prior conduct. However, Williams had been convicted of all of the offenses to which the police reports applied. This court noted that this evidence was legally sufficient to support Williams' commitment because "the essence of those [hearsay] statements had been either admitted by Williams or subjected to the scrutiny of a trial." Id. at 532. Thus, because the factual statements had been subject to the scrutiny of a trial, Williams' due process rights were not violated by the use of the hearsay.
Neither Jenkins nor Williams involved an incompetent respondent. However, taken together, Jenkins and Williams stand for the proposition that a Ryce Act respondent has a due process right to challenge the factual assertions contained in the police reports and other documents that underlie an expert's opinions when those factual assertions have neither been admitted through a plea nor tested at trial. It follows that in order to meaningfully exercise that due process right, a Ryce Act respondent must be competent so that he or she may both testify on his or her own behalf and assist counsel in challenging the alleged facts. Otherwise, the due process right is simply illusory. We emphasize that it is not the admission of hearsay that thwarts a Ryce Act respondent's due process rights; indeed, this court has held that section 394.9155(5), allowing hearsay to be admitted against a Ryce Act respondent, satisfies due process. See Rodgers v. State (In re Commitment of Rodgers), 875 So.2d 737, 740 (Fla. 2d DCA 2004) (citing Lee v. State, 854 So.2d 709, 713 (Fla. 2d DCA 2003)). Instead, it is an incompetent respondent's inability to assist counsel in challenging the facts contained in those hearsay statements that violates due process.
The dissent proposes that the presence of a guardian ad litem coupled with an attorney somehow afforded Branch due process. The irony in this suggestion is found in the fact that the guardian ad litem moved to withdraw because there was nothing of substance he could do to assist in Branch's defense under the circumstances. The primary purpose of a guardian ad litem is to advocate for the best interests of the incompetent person in a legal proceeding. Even with these best interests in mind, however, a guardian ad litem cannot stand in the exact shoes of an incompetent defendant. A guardian ad litem lacks the personal, factual knowledge necessary to assist counsel in mounting a defense against factual assertions, adduced through hearsay, that have never been tested at trial or admitted to. The appointment of a guardian ad litem is neither sufficient nor appropriate for the task of assisting counsel in challenging factual matters and presenting contradictory evidence *328 known only by the inarticulate, incompetent respondent. In short, a guardian ad litem in this situation  where the only basis for the expert's determination that Branch was a sexually violent predator was hearsay accounts that had been neither tested nor admitted in any judicial proceeding  was no substitute for a competent defendant. The fact that the trial court complied with rule 1.210(b) in appointing a guardian ad litem does not foreclose a due process analysis.
Our holding in this regard is further supported by the supreme court's decision in Carter, which addressed the issue of whether a defendant in a postconviction collateral proceeding was entitled to be competent. The court first noted that postconviction proceedings are civil and so not subject to rule 3.211. Carter, 706 So.2d at 875. However, the court held that a trial court must hold a competency hearing in a postconviction proceeding when there are "specific factual matters at issue that require the defendant to competently consult with counsel." Id. These factual matters must be of such a nature that their development requires the defendant's input. Id. Thus, claims raising purely legal issues that are of record and factual claims that do not require the defendant's input may proceed. Id. at 876.
Like postconviction proceedings, Ryce Act proceedings are civil in nature. Thus, any right to competence arises solely from due process concerns.[4] Like defendants in postconviction proceedings, respondents in Ryce Act proceedings have no due process right to be competent when the State's evidence supporting commitment is entirely of record. However, when the State relies on evidence of prior bad acts supported solely by unchallenged and untested factual allegations to establish any element of its case, the respondent has a due process right to be competent so that he or she may consult with counsel and testify on his or her own behalf. Thus, if the State's experts choose to rely on unchallenged hearsay to establish the respondent's prior uncharged bad acts, the respondent has a right to be competent so that he or she can exercise his or her due process right to challenge the facts underlying that hearsay evidence.
We recognize that several out-of-state courts have held that a respondent in a sexually violent predator proceeding has no constitutional right to be competent. See, e.g., In re Detention of Cubbage, 671 N.W.2d 442, 446 (Iowa 2003); State ex rel. Nixon v. Kinder, 129 S.W.3d 5 (Mo.Ct.App.2003). However, in both of those cases, the respondents had several prior convictions for sexual offenses and the states relied on the fact of those convictions for commitment. Thus, neither case analyzed the situation in which the State relies solely on hearsay to establish prior bad acts rather than relying on the fact of prior convictions to support the commitment. Because these cases did not address the issue before us, we find them inapplicable to our analysis.[5] Additionally, *329 we agree with the dissent that a Jimmy Ryce respondent does not have a fundamental constitutional right to be competent. Our concern is not with Branch's substantive due process rights, but with his procedural due process rights. Our holding is not as broad as the dissent would suggest.
We caution that we do not hold that every Ryce Act respondent must be competent during a Ryce Act proceeding. Instead, Ryce Act respondents have a due process right to be competent only when the State intends to present hearsay evidence of alleged facts that have neither been admitted by way of a plea nor subjected to adversarial testing at trial and so are subject to dispute and counterevidence. Thus, it is the State's trial strategy that will determine whether a Ryce Act respondent must be competent. If the State chooses to proceed against a Ryce Act respondent based on hearsay reports of prior bad acts that did not result in prosecution or conviction to establish an element of its case, the State may do so only when the respondent is competent to challenge that evidence.
In this case, the State's experts relied on "factual" evidence to which Branch never admitted and which was never subjected to the adversarial testing of a trial. Under this circumstance, Branch had a due process right to be competent so that he could assist his counsel in challenging this evidence and presenting a defense. Even the State recognized that it would be in the interests of justice for Branch to be competent to testify, and the State specifically requested a continuance so that Branch's competence could be restored. Because under the facts of this case Branch had a due process right to be competent, we hold that the trial court abused its discretion in denying both Branch's motion and the State's motion for a continuance of the proceeding until Branch was competent to testify and assist his counsel. Accordingly, we reverse and remand for a new commitment trial once Branch is restored to competence.
Reversed and remanded.
FULMER, J., Concurs.
CANADY, J., Dissents with opinion.
CANADY, Judge, Dissenting.
Because I disagree with the majority's conclusion that Branch has a due process right to be competent during the Ryce Act commitment proceedings, I dissent. I do not agree with the majority's view that Branch's incompetence at the time of his trial rendered the provision of the Ryce Act permitting the admission of hearsay testimony unconstitutional as applied to Branch.
Although a criminal defendant has a constitutional right to not be tried while incompetent, the defendant in a civil action ordinarily has no similar right. See Fla. R. Civ. P. 1.210(b). As the majority acknowledges, proceedings under the Ryce Act are civil proceedings. I am not convinced that due process requires that an exception from the principle allowing civil litigation against incompetent defendants be made for Ryce Act respondents  even under the specific circumstance addressed by the majority opinion.
Unlike the majority, I would adopt the view expressed in Cubbage and Nixon that there is no basis for requiring the competency *330 of persons subject to proceedings for commitment as sexually violent predators. The requirement imposed by the majority is in tension with the nature of proceedings under the Ryce Act. As the court observed in Nixon, 129 S.W.3d at 8: "The very nature of civil commitments is that they commit for treatment those who pose a danger to themselves or others because they suffer from a mental disease or defect and are unable to comprehend reality or to respond to it rationally." The point applies not only to persons subject to traditional civil commitment proceedings but also to those who are subject to commitment as sexually violent predators.
Such persons must suffer from "a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment." § 394.912(10)(b) (emphasis added); see also § 394.912(5) ("`Mental abnormality' means a mental condition affecting a person's emotional or volitional capacity which predisposes the person to commit sexually violent offenses."). Such "a mental abnormality or personality disorder" will not necessarily result in legal incompetency, but it may well have that consequence. It therefore is anomalous to require that in Ryce Act proceedings the persons who suffer from the requisite mental abnormality or personality disorder also be competent.
I also agree with the analysis in Cubbage which supports the conclusion that the respondent in a sexually violent predator commitment proceeding "does not have a fundamental right to be competent," 671 N.W.2d at 447, and that a statutory scheme permitting the commitment of incompetent sexually violent predators is consistent with the requirements of substantive due process because there is "`a reasonable fit between the governmental purpose and the means chosen to advance that purpose.'" Id. at 448 (quoting In re Detention of Garren, 620 N.W.2d 275, 285 (Iowa 2000)).
Furthermore, I find nothing in Florida law or federal law which requires the result reached by the majority. The majority states that
taken together, Jenkins and Williams stand for the proposition that a Ryce Act respondent has a due process right to challenge the factual assertions contained in the police reports and other documents that underlie an expert's opinion when those factual assertions have neither been admitted through a plea nor tested at trial.
The majority moves from this point  to which I do not take exception  to the conclusion that "in order to meaningfully exercise that due process right, a Ryce Act respondent must be competent so that he or she may both testify on his or her own behalf and assist counsel in challenging the alleged facts." Although I acknowledge that ordinarily a competent litigant will be in a better position than an incompetent litigant to take advantage of the benefits afforded by due process, that does not mean that the due process provided an incompetent litigant is "simply illusory." If that were the case, the due process afforded to all incompetent civil defendants would be "simply illusory," and the general rule allowing civil litigation against incompetent persons would be unconstitutional. The ability of counsel and a guardian ad litem to defend the interests of an incompetent respondent in a Ryce Act proceeding by challenging the evidence relied on by the State and introducing contradictory evidence provides a meaningful opportunity to be heard.
Nor am I persuaded that Carter governs the disposition of the instant case. Admittedly, Carter, 706 So.2d at 875, established that "a judicial determination of competency *331 is required when there are reasonable grounds to believe that a capital defendant is incompetent to proceed in postconviction proceedings in which factual matters are at issue, the development or resolution of which require the defendant's input." Furthermore, the holding in Carter was based on "considerations of due process" and thus was "constitutional in nature." Ferguson v. State, 789 So.2d 306, 311 (Fla.2001). Carter is distinguishable from the instant case, however, because capital postconviction proceedings, although civil in nature, are fundamentally different from Ryce Act civil commitment proceedings. Capital postconviction proceedings determine whether sentences of death will be carried out. Ryce Act proceedings determine whether individuals will be committed for treatment as sexually violent predators. In one case, the question at issue is whether the most severe punishment will be imposed; in the other, the question is whether treatment will be provided  admittedly in a context that involves a deprivation of liberty.
The Florida Supreme Court has repeatedly recognized that "death is different" and has imposed heightened requirements to ensure the fairness of proceedings that lead to the imposition of a sentence of death. See Amendments to Fla. R.Crim. P. & Fla. R.App. P., 875 So.2d 563, 567-68 (Fla.2004) (Cantero, J., concurring) ("As we have repeatedly recognized, `death is different.'"). See, e.g., Walker v. State, 707 So.2d 300, 319 (Fla.1997); Crump v. State, 654 So.2d 545, 547 (Fla.1995). The dynamics of a capital case and those of a noncapital case are different not just in degree, but in kind. A death penalty case, involving the ultimate penalty, invokes a host of pre- and post-trial procedures, as well as requirements for court and counsel, that do not exist in any other context.. I conclude that it is unwarranted to extend the principle adopted in Carter with respect to capitol postconviction proceedings to the wholly dissimilar context of Ryce Act proceedings.
If Carter is applicable in the context presented by the instant case, I can see no reason that it would not apply in all Ryce Act proceedings in which factual issues are in dispute, which in practice means every Ryce Act case. It is also true that the use of hearsay evidence is an integral part of the statutory scheme under the Ryce Act. See In re Commitment of Cartwright, 870 So.2d 152, 162 (Fla. 2d DCA 2004) ("Invalidation of the legislative provision permitting the consideration of reliable hearsay evidence in Ryce Act proceedings would fundamentally alter the nature of those proceedings and disrupt the substantive statutory scheme established by the legislature for the civil commitment of sexually violent predators."). Thus the limitation of the rule articulated by the majority to cases in which hearsay evidence is relied on by the State is in reality no limitation at all.
For the foregoing reasons, I would reject Branch's due process claim and affirm the order committing him under the Ryce Act.
NOTES
[1] Dr. Bursten had not evaluated Branch for competence. Dr. Bursten evaluated Branch solely to determine if he met the statutory criteria as a sexually violent predator.
[2] One such example of Branch's bizarre behavior during the proceeding was his effort to get the jury to participate in doing "the wave."
[3] We emphasize that, unlike the dissent's suggestion in this regard, the basis for Branch's incompetence (his then  untreated schizophrenia) was not asserted to contribute to his likelihood to engage in acts of sexual violence. In many cases  if not most  a Ryce Act respondent's likelihood to engage in acts of sexual violence will not be based on a condition that also would render the defendant incompetent. Thus we do not agree with the dissent that it "is anomalous to require that in Ryce Act proceedings the persons who suffer from the requisite mental abnormality or personality disorder also be competent."
[4] We acknowledge, as the dissent points out, that the supreme court has stated that "death is different" in terms of the measure of process that is due. However, we find that justification for not affording Branch a meaningful opportunity to present a defense unavailing. Although Carter was a capital postconviction proceeding, that case did not hinge on the fact that it was a capital proceeding so much as that a defendant must be competent to assist counsel when there are factual matters at issue that are not of record. Additionally, Jenkins and Williams  the other two cases that form the framework for our analysis  were not capital cases.
[5] In his brief and at oral argument, Branch repeatedly cited this court to In re Commitment of Fisher v. Texas, 123 S.W.3d 828 (Tex.App.2003), which held that all respondents under the Texas sexually violent predator statute have a due process right to be competent during commitment proceedings. However, due to numerous significant differences between the Texas sexually violent predator statute and the Ryce Act, we do not find the analysis or reasoning of Fisher applicable to our analysis.