933 So.2d 1271 (2006)
In re COMMITMENT OF William CAMPER.
William Camper, Appellant,
v.
State of Florida, Appellee.
No. 2D03-1053.
District Court of Appeal of Florida, Second District.
July 28, 2006.
James Marion Moorman, Public Defender, and Debra K. Brueckheimer, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Diana K. Bock, Assistant Attorney General, Tampa, for Appellee.
FULMER, Chief Judge.
William Camper challenges his involuntary civil commitment as a sexually violent predator pursuant to the "Jimmy Ryce Act," sections 394.910-.931, Florida Statutes (2002). He argues that, because he was mentally incompetent and could not participate in his defense, the trial court erred in going forward with the civil commitment proceedings. We reverse based on our opinion in Branch v. State, 890 So.2d 322 (Fla. 2d DCA 2004), which recognized a Ryce Act respondent's procedural due process right to be competent in order to assist counsel in challenging facts offered by the State that have not been previously admitted or tested in a trial.
It is undisputed in this case that at the time of the commitment trial Camper was mentally incompetent under the standards governing competency in criminal cases. Camper was unable to appreciate the nature of the proceedings, to assist his counsel, or to manifest appropriate courtroom behavior. See Fla. R.Crim. P. 3.211.[1]
In Branch, which also involved a mentally incompetent respondent in a Ryce Act proceeding, a psychologist who testified *1272 for the State relied on uncharged sexual assaults documented in Department of Corrections records to conclude that Branch engaged in a pattern of deviant sexual activity and so had a mental abnormality sufficient to qualify him as a sexually violent predator. 890 So.2d at 324. In reversing for a new commitment trial, this court recognized that Branch had a procedural due process right to challenge factual assertions contained in the police reports and other documents that were pertinent to the expert's formulation of his opinion where those factual assertions had neither been admitted through a plea nor tested at trial. Id. at 327. We concluded that in order to meaningfully exercise his due process right, Branch had to be competent so that he could assist counsel in challenging the alleged facts and testify on his own behalf:
Like defendants in postconviction proceedings, respondents in Ryce Act proceedings have no due process right to be competent when the State's evidence supporting commitment is entirely of record. However, when the State relies on evidence of prior bad acts supported solely by unchallenged and untested factual allegations to establish any element of its case, the respondent has a due process right to be competent so that he or she may consult with counsel and testify on his or her own behalf.
Id. at 328.
The dispute between the parties on appeal in the present case centers on the nature of the evidence admitted against Camper at his trial. The State contends the evidence was of record, and unlike the evidence in Branch, it did not consist of untested factual allegations such that Camper's input or ability to testify was required in order for his counsel to potentially challenge the allegations. We conclude that the evidence in this case fell into both categories. The State relied in part on convictions of record; however, a portion of the evidence presented and relied on by the experts was previously untested.
Three witnesses testified at trial for the State, Drs. Brown and Raymond, both psychologists, and Camper's niece. Dr. Brown testified that Camper suffers from "schizoaffective, which is similar to schizophrenia." She also diagnosed him with alcohol dependence and pedophilia at the time she did her initial evaluation, although she did not presently diagnose him with pedophilia because it seems that he suffers from pedophilia only when he is under the influence of alcohol.
Dr. Brown testified that she interviewed Camper in 2000, more than two years before the trial. In forming her opinion, she relied on the interview and information contained in the Department of Children and Families' file, which had arrest records, violation of probation records, Department of Corrections records, and medical records. She also reviewed several recent depositions. Camper's first sexual offense was for lewd and lascivious conduct against his nine-year-old niece in 1986. He entered a plea to this offense and was sentenced in 1989. The arrest report indicated that he had tried to kiss his niece and touched her crotch on the outside of her clothes. He was intoxicated at the time. The report indicated that there had been two occasions of inappropriate touching. However, according to the niece's recent deposition, the abuse had been going on for a number of years, from when she was three or four until she was nine. Camper had admitted to Dr. Brown that he touched his niece, but he said the touching had been going on for a few months. According to the doctor, Camper did not consider the touching to be sexual abuse because his niece was still a virgin. Dr. Brown relied on the additional information provided in the niece's deposition in forming her opinion.
*1273 Dr. Brown also considered records indicating that Camper violated his probation in 1989 because of inappropriate behavior with an adult female. However, although the violation records indicate that Camper admitted he violated his probation, they do not indicate whether the admission was based on the allegation regarding the inappropriate behavior, for which apparently there was no conviction, or an additional allegation of absconding. Camper was unable to assist his counsel in clarifying this issue during the Ryce Act trial or further developing the facts underlying the inappropriate behavior allegation. Upon revocation of his probation, Camper was sentenced to three years in prison. He was released in 1990.
Dr. Brown next addressed a sex offense Camper committed with a thirteen-year-old boy in 1993. Camper was convicted of lewd and lascivious conduct for touching the boy and received a sentence of seven years in prison. Dr. Brown relied on facts in the police report of this offense in rendering her opinion, including the fact that Camper was intoxicated at the time of the offense. She testified that at the time of the police report, Camper did not accept responsibility for this act and that he denied committing the offense when she initially interviewed him. She noted that in his deposition, Camper admitted the offense. This deposition was taken one month prior to the Ryce Act trial. When asked what Camper said in his deposition that he did to the boy, Camper's counsel objected based on Camper's incompetence at the time of the deposition. The objection was overruled.
Camper was conditionally released from his seven-year sentence but violated the release terms by consuming alcohol and was sent back to prison to finish his sentence. Since then, he has not been released into the community. Dr. Brown stated that Camper's inability to refrain from consuming alcohol was a significant fact in rendering her opinion as to whether Camper is likely to reoffend.
Dr. Brown testified that Camper's mental disorder affects his emotional or volitional control to the point where he has serious difficulty controlling his behavior. This behavior predisposes him to commit acts of sexual violence, and he poses a menace to society if not committed for long-term care. Camper's propensity to reoffend sexually is affected, in part, by his inability to refrain from alcohol use. He is likely to reoffend because of his schizoaffective disorder. He cannot be effectively treated for his alcohol abuse because of this disorder, and he does not have a strong supportive social environment in which to live if released. Dr. Brown noted that Camper does not sexually act out when he is properly medicated. His acting out sexually is attributable to his schizoaffective disorder and alcohol dependence.
On cross-examination, Dr. Brown testified that her current diagnosis was based on her 2000 interview of Camper and her review of current records. She acknowledged that, other than the depositions, she did not know who wrote the records she reviewed or where the information came from that was reflected in the records. Dr. Brown further testified that when she interviewed Camper in prison in October 2000, she did a typical mental status examination and found him to be competent. He was medicated at the time. However, it was her opinion that Camper was not competent at the time he gave his recent deposition. Dr. Brown stated that Camper's performance in his deposition did not impact her diagnosis of his mental disorder or whether he is likely to reoffend. It did strengthen her opinion because it offered additional information that he is currently *1274 continuing to exhibit symptoms of active schizoaffective disorder.
Camper's niece next testified that Camper first touched her in a sexually inappropriate manner when she was two or three. This continued through 1986 when she was nine. At that time, the police were contacted, and Camper was charged with a lewd and lascivious act. When asked to describe generally what he used to do to her, the niece testified that Camper would put his finger in her vagina, touch and kiss her breasts and vagina, and on one occasion he made her touch his penis. When the abuse occurred, Camper was drinking and was not taking his medication. When he was on his medication and not drinking he was a totally different person and did not touch her, but it seemed that he was drunk every day.
Dr. Raymond testified that Camper has several diagnoses, the major one being pedophilia with sexual attraction to both sexes. He also suffers from chronic undifferentiated schizophrenia and alcohol abuse, which was currently in remission due to confinement, and is possibly mildly mentally retarded. In forming his opinion, the doctor used Camper's prison file, medical file, two psychiatric evaluations done as to his competency, Camper's deposition, and doctors' depositions concerning his competency.
In Camper's criminal history, Dr. Raymond found three arrests for sexually related offenses to be significant. First, the 1986 conviction for lewd and lascivious conduct involving Camper's niece indicated Camper met the criteria for pedophilia. It also indicated some sexual impulsivity. After hearing the niece testify in this trial, the doctor realized the sexual abuse was much more significant than the one behavior underlying the single conviction, and he stated that this testimony strengthened his opinion. The second arrest noted by Dr. Raymond occurred in 1989 when Camper was charged with burglary and battery on a woman. As a result, Camper's probation was violated, and this showed his inability to control his sexual impulses according to Dr. Raymond. It appears that the information regarding this arrest is contained in the incomplete violation records, which reflected an allegation of inappropriate behavior with an adult female for which no conviction appears and for which there is no record that this allegation served as the basis for the revocation of Camper's probation. The third arrest Dr. Raymond considered occurred when Camper was forty-nine. This arrest led to Camper's plea of guilty to lewd and lascivious conduct on a thirteen-year-old boy. This was significant because of the age of the child, because Camper was delusional at the time, and because he was drinking during the sexual offense. The doctor noted that Camper's alcohol abuse was related to all of the events. He also noted that in Camper's deposition, he said that he has had hallucinations since he was eleven and that he has received disability for his schizophrenia since age twenty-two. He has a strong recurrent theme of sexuality through his hallucinations, which still continues.
In rendering his opinion that Camper is likely to reoffend, Dr. Raymond observed that Camper has not been able to complete probation or controlled release periods. He has not accepted responsibility for his sexually related behavior and he has not consented to treatment while at the civil commitment center. Other risk factors making him likely to reoffend are having a stranger victim, offending in a public place, having a wide range of victims (both children and adults, males and females), offending while on probation, seeing himself as having no problem, having a male victim, having an unrelated victim, having disciplinary reports while in prison, having a pattern of substance abuse, having offended *1275 against someone thirteen to fifteen years old, and failing to take his medications regularly.
On appeal, counsel for Camper notes that Camper had pleaded to two convictions of record for sexual offenses, one involving Camper's niece and one involving a boy. Yet, in this Ryce Act proceeding, the experts relied on testimony given by Camper's niece in a deposition and at trial indicating that the abuse against her took place over a number of years. This was untested evidence that extended beyond the facts of the 1986 conviction. Also, the boy victim's deposition, upon which both doctors relied, was untested evidence of abuse that extended beyond the record facts of the conviction involving the boy. Counsel further argues that the deposition of Camper, taken at a time when he was not competent, was improperly relied on by the experts in forming their opinions. We agree. The evidence derived from the several depositions used in this case and the niece's in-court testimony exceeded the scope of the record facts of the two convictions and placed before the jury facts that have never been admitted by plea or established by trial. The experts also relied on the 1989 allegation that Camper violated his probation by an arrest for engaging in inappropriate behavior with an adult female even though no conviction resulted from the arrest and the violation records do not identify whether this allegation was proven at the revocation proceeding.
We hold that the rationale of Branch applies to not only the untested hearsay evidence that was presented but also to the testimony at trial concerning untested factual allegations. Because there was a significant amount of untested evidence presented that was outside the scope of the record facts documented by his prior sex-related convictions, Camper had a procedural due process right to be competent in order to consult with counsel and testify on his own behalf. See Branch, 890 So.2d at 329. "Civil commitment proceedings involve a serious deprivation of liberty and, thus, such proceedings must comply with the due process clauses of the Florida and United States Constitutions." See State v. Goode, 830 So.2d 817, 825-26 (Fla.2002). The violation of Camper's right to due process requires reversal. Accordingly, we reverse and remand for a new commitment trial once Camper is restored to competency or for a new commitment trial in which the State presents only that evidence which will not violate Camper's right to due process should he not be restored to competency.
Reversed and remanded.
NORTHCUTT, J., and DEMERS, DAVID A., Associate Judge, Concur.
NOTES
[1] Although the rules of criminal procedure do not apply in Ryce Act proceedings, the experts who evaluated Camper's competency used the criminal standards because Camper's liberty interests were at stake and there are no articulated standards for assessing competency in civil proceedings.