803 So.2d 783 (2001)
Damon JENKINS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-1802.
District Court of Appeal of Florida, Fifth District.
November 30, 2001.
Rehearing Denied January 4, 2002.
*784 James B. Gibson, Public Defender, and Nancy Ryan, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Robert E. Bodnar, Jr., Assistant Attorney General, Daytona Beach, for Appellee.
HARRIS, J.
This is yet another Jimmy Ryce appeal. Although other issues are raised[1], the decisive *785 issue to us is whether the extensive hearsay evidence which was permitted to go to the jury deprived Jenkins of a fair trial guaranteed by the state and federal constitutions.
In considering this appeal we assume, as we must at this juncture, that the Jimmy Ryce Act is a constitutional civil commitment proceeding. Even so, Jenkins is entitled to a due process hearing before he can be deprived of his liberty. See U.S. Const. amend. XIV, § 1. In Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), a civil action involving the rights of one whose welfare benefits had been terminated, the United States Supreme Court held that the failure to permit the welfare recipient the opportunity to confront the witnesses against him denied the recipient of his due process rights. Permitting police reports containing unsworn allegations of serious sexual misconduct into evidence in this case without providing Jenkins any opportunity to confront the witnesses denied him a fair trial.
The legislature has determined that in Jimmy Ryce Act trials, hearsay evidence may be introduced even though it may not be the sole basis for commitment. See Section 394.9155(5), Fla. Stat. Obviously this statute must be construed in light of the Fourteenth Amendment right of confrontation. The Florida Legislature cannot, nor do we believe it intended to, rescind the due process protections of the United States Constitution. Courts must recognize the distinction between police reports which contain unchallenged and unchallengeable prejudicial hearsay and police reports which relate to cases in which the respondent has pled or has been convicted. It is only the latter which have an indicia of reliability. The Supreme Court of California, in People v. Otto, 26 Cal.4th 200, 109 Cal.Rptr.2d 327, 26 P.3d 1061 (2001), explained the difference:
The most critical factor demonstrating the reliability of the victim hearsay statements is that Otto was convicted of the crimes to which the statements relate... As a result of such a conviction, some portion, if not all, of the alleged conduct will have been already either admitted in a plea or found true by a trier of fact after trial.
There are two problems in this case. One is the nature of the hearsay which the trial court permitted to go to the *786 jury. Police officers were permitted to testify from police reports, sometimes prepared by other officers, as to what out-of-court witnesses had told the police and, it appears from the nature of some of the statements, what out-of-court witnesses had told police that others had told them. There is obviously a broad band of "out of court statements" which compose the hearsay spectrum. The spectrum goes from reliable hearsay to rumor to gossip. For example, one report quoted Jenkins' uncle as saving that Jenkins had on three previous occasions entered residences of other relatives and asked permission to climb into bed with minor female children. Was the uncle there to observe the facts about which he "testified" through the police officer or was he merely reporting what others had told him? Too much rumor and gossip were permitted to go to this jury.
Another problem in this case is that Jenkins appears to have been committed almost solely on hearsay evidence. Section 394.9155(5), Fla. Stat., while permitting hearsay evidence to be used in determining whether to seek commitment "unless the court finds that such evidence is not reliable," mandates that "[i]n the trial, however, hearsay evidence may not be used as the sole basis for committing a person."
In this case, evidence was presented by "experts" whose opinions were based in large part on the police reports which contained not only hearsay but also double hearsay and, as indicated earlier, perhaps triple hearsay. If this type of unreliable hearsay is factored into the experts' opinion, do we not have a case of "garbage in, garbage out?" Jenkins' qualifying offense, lewd assault involving a child, was committed several years earlier. It was his only conviction relating to sexual matters. However, police were permitted to testify from police reports that Jenkins had broken into one home and kneeled at a 10-year-old girl's bed until she kicked him and had entered other homes to ask permission to go to bed with minors. The problem with this testimony is that Jenkins was not convicted of sexual misconduct on any occasion in which a report was generated (other than the qualifying offense) or on any occasion referred to in any such report because, if the matter went to trial at all, it was resolved by plea to a non-sexual offense. Therefore, in many of the instances in which out-of-court witness were permitted to testify through the mouths of police officers, Jenkins had no opportunity to confront the witnesses and challenge their extremely prejudicial testimony. Confronting the messenger does not meet the due process requirement; cross-examining the officer is insufficient. See Rodriguez v. State, 753 So.2d 29 (Fla.2000).
The only evidence presented by the State which might have offered Jenkins an opportunity to confront witnesses against him were depositions taken in other cases, cases in which the truth of the witnesses' testimony was never submitted to the jury because the State elected to offer a plea to a lesser included offense which involved no allegations of sexual misconduct.[2] These depositions, read into *787 evidence over the respondent's objections, were permitted even though the State had made no effort (of record) to have the witnesses at the commitment hearing. In neither case was it properly established, when objections were raised by respondent, that the witness was outside the 100 mile limit or otherwise unavailable to testify.[3]
Because Jenkins was committed, to a large extent, on the testimony of out-of-court witnesses given through the mouths of police officers, which testimony lacked the indicia of reliability resulting from a trial which ended either in a conviction by the factfinder or in a plea to an offense relating to the critical allegations, Jenkins was denied his right to confront his accusers. The introduction of this unreliable evidence was so prejudicial that it tainted the entire proceedings.
If the State is truly concerned, based on the information before it (hearsay or otherwise) that Jenkins remains a danger to others, then we have a perfect example of why we have the Baker commitment proceedings. But the Baker proceedings require, even if the Jimmy Ryce Act does not, that the witnesses be sworn. Therefore if the State proceeds under the Baker Act, Jenkins will be given the opportunity to confront those with actual knowledge who are called to testify against him. If the hearsay and innuendo herein is correct, it appears that Jenkins has a maturity and reasoning ability even less than that of his very young victims. A commitment under the Baker Act would thus be far more humane, and perhaps even prove genuinely helpful, than confinement under the Jimmy Ryce Act.
REVERSED.
SHARP, W., and PETERSON, JJ., concur.
NOTES
[1] The constitutionality of the Jimmy Ryce Act is again challenged. The United States Supreme Court, of course, reversed the Kansas Supreme Court and held the Kansas civil commitment statute (a statute very similar to our Jimmy Ryce Act) constitutional under the federal constitution. See Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). The Kansas Supreme Court has again, for a reason not considered by the United States Supreme Court's earlier decision, invalidated their statute. In its Hendricks opinion, the United States Supreme Court operated from what appears to have been a defense stipulation that Hendricks was indeed a danger to society and would likely commit additional violent sexual offenses if not kept confined. In In re Crane, 269 Kan. 578, 7 P.3d 285 (2000), the Kansas Supreme Court again held its statute unconstitutional because there is no requirement in its act that there be proof that a respondent is incapable of controlling his behavior. This matter is once again before the United States Supreme Court. In the concurring opinion in State v. Brewer, 767 So.2d 1249 (Fla. 5th DCA 2000) (Harris, J. concurring), the problem relating to conviction by profile was discussed. Since this issue will shortly be authoritatively decided, no further discussion is warranted.

Further, in Westerheide v. State, 767 So.2d 637 (Fla. 5th DCA 2000), this court held our Jimmy Ryce Act to be constitutional under the Florida Constitution. This matter is presently pending before the Florida Supreme Court for consideration. Jenkins also challenged the use of actuarial instruments as not meeting the Frye standard. Because of our ruling on the hearsay challenge, it is unnecessary for us to address this issue.
[2] Even though section 90.803(22), Fla. Stat. (1998), purports to permit former testimony to be introduced into evidence without a showing of unavailability of the witness, the Fourth District in Abreu v. State, 804 So.2d 442 (Fla. 4th DCA 2001), held this provision to be in violation of the defendant's right to confrontation, a right which includes compelling the witness to stand face to face with the jury in order that they may look at him in determining whether his testimony is worthy of belief. We adopt the Abreu analysis and apply it also to those civil proceedings in which due process grants the respondent a right to confrontation.
[3] The State's comment that the witness was visiting a relative in the hospital, without more, is simply insufficient. See Colonnades, Inc. v. Vance Baldwin, Inc., 318 So.2d 515, 517 (Fla. 4th DCA 1975) ("In Haverley v. Clann, supra, it was held that the trial court did abuse its discretion in admitting the deposition into evidence, not because the predicate was found in the deponent's sworn testimony, but because the only showing in support of the predicate was counsel's unsworn statements over the objection of opposing counsel.") (citing Haverley v. Clann, 196 So.2d 38 (Fla. 2d DCA 1967)).