SHARP, W., J.
Kakuk appeals from an order of indefinite commitment, following a jury trial pursuant to the Jimmy Ryce Act, sections 394.910 to 394.932, Florida Statutes (now renamed the Sexual Predator Act, SPA).[1] He was found to be a sexually violent predator because he suffers from a mental disorder which causes him serious difficulty in controlling his aberrant sexual behavior, and which predisposes him to commit sexually violent offenses in the future.[2] In *1090 this appeal, Kakuk argues he was entitled to a different jury instruction,[3] a point we find without merit, and that his videotaped deposition should not have been taken and later played for the two state expert witnesses, and for the jury during the trial. We affirm.
The state filed a petition for civil commitment on September 30, 2002, reciting all the required grounds set forth in the Jimmy Ryce Act and sought a probable cause finding to detain Kakuk for trial. The two state experts, Dr. Gregory A. Pritchard and Dr. Nancy Wonder, prepared their supporting evaluations based on their review of available records because, pursuant to section 394.913(2)(c), Kakuk had declined a personal interview with them.
Section 394.913(2)(c) provides:
Before recommending that a person meets the definition of a sexually violent predator, the person must be afforded a personal interview. If the person agrees to participate in a personal interview, at least one member of the team who is a licensed psychiatrist or psychologist must conduct a personal interview of the person. If the person refuses to fully participate in a personal interview, the multidisciplinary team may proceed with its recommendation without a personal interview of the person. (emphasis added)
In his report, Dr. Pritchard stated he had been unable to perform a formal mental status evaluation because of the lack of a personal interview. Thus, Dr. Pritchard said he was unable to ask Kakuk about his perception of his offending behavior and his sexual history.
In October of 2002, the trial court found probable cause and Kakuk was transported to a Florida Civil Commitment Center in Arcadia, Florida, pending a trial. The Department filed a motion to compel the psychological examination of Kakuk on March 10, 2003, pursuant to Florida Rule of Civil Procedure 1.360,[4] because Kakuk’s *1091 mental condition was in controversy, in this proceeding. It also alleged that without a mental examination, the state’s expert witnesses would have to rely only on records and would be unable to make a formal mental status evaluation of Kakuk. An attached affidavit further explained the state’s experts needed to ask Kakuk about his current mental condition, his criminal history, his sexual history, his family history, his treatment history, and about his future plans and attitudes about his sex offenses and treatment.
The trial court partially granted the motion on March 25, 2008, citing to section 394.9155(7)(b) of the Jimmy Ryce Act. That statute provides:
(7) If the person who is subject to proceedings under this part refuses to be interviewed by or fully cooperate with members of the multidisciplinary team or any state mental health expert, the corn! may, in its discretion:
(a) Order the person to alloiv members of the multidisciplinary team and any state mental health experts to revieiv all mental health reports, tests, and evaluations by the person’s mental health expert or experts; or
(b) Prohibit the person’s mental health experts from testifying concerning mental health tests, evaluations, or examinations of the person, (emphasis added)
Pursuant to that statute, the court ruled that Kakuk must notify the court if he intended to call expert witnesses to testify at trial. If he planned to do so, then the court required him to participate in a mental health examination by the state’s experts. It also ruled that if Kakuk did not submit the reports and records to the state from his expert witnesses and if he did not submit to a mental health examination by the state experts, the court would prohibit Kakuk’s expert witnesses from testifying at the trial. Kakuk apparently failed to comply with various case management orders and specifically did not furnish his witness lists.
In January of 2004, the public defender filed a demand for a jury trial, on behalf of Kakuk. The state filed a motion to compel a psychological examination of Kakuk, pursuant to Florida Rule of Civil Procedure 1.360, asserting that his mental condition was “in controversy.” Kakuk’s public defender argued that Kakuk should not be deposed under this rule because, although the Jimmy Ryce Act provides generally that the Florida Rules of Civil Procedure apply “unless otherwise specified in this part,”[5] the limitations and qualifications set out in subsection (7) of the same statute are controlling. The state is not entitled to a compulsory mental examination of a person undergoing a commitment proceeding and the only consequences of a person’s refusal should be those outlined in subsection (7)(a) or (b).
The court issued an order compelling a psychological exam on March 23, 2002, but no examination occurred.
Later, the state moved to depose Kakuk, pursuant to Florida Rules of Civil *1092 Procedure, as a party, as part of the discovery process, pursuant to Rule 1.280. The public defender argued against the motion, pointing out that the state was trying to end-run the limitations in section 394.9155(7), Florida Statutes. The court said that the Jimmy Ryee Act “bothered him,” as it did most judges, because it is not truly fish nor fowl; i.e., criminal or civil.[6] Because the consequences of commitment and indefinite loss of freedom are severe,[7] some constitutional rights may carry over to these proceedings, which may not be applicable to strictly civil proceedings. See In re Commitment of Branch, 890 So.2d 322 (Fla. 2d DCA 2004); Jenkins. v. State, 803 So.2d 783 (Fla. 5th DCA 2001). However, the court ruled that a psychological examination and a civil deposition are not the same thing.
Kakuk was deposed on video by an attorney for the Department. The attorney asked the questions the state’s mental health experts needed to ask Kakuk to formulate their evaluations concerning his family history, his sexual history, how he “felt” about his offenses and sexual offender treatment, etc. The video deposition was furnished to the state’s mental health experts in advance of the trial and the deposition was played in full to the jury at the trial. The public defender raised the same objections and others, to having the deposition played for the jury. At the trial, Kakuk called no expert mental health witnesses to testify for him.
The state presented three expert witnesses,[8] including Dr. Wonder and Dr. Pritchard. They testified that although they had concluded that Kakuk was a sexually violent predator and likely to reof-fend if released from civil commitment, based on their assessment of records available, both specifically reinforced their opinions after viewing the video-taped deposition taken by the state. Dr. Pritchard stressed Kakuk’s negative attitude regarding mental health treatment providers, his tolerance of sex offending behavior, his denial of having “cycles,” his feelings of loss relating to his first marriage, job, freedom and finances, all revealed in the deposition. These factors made it highly likely, in the doctor’s opinion, that Kakuk would reoffend. Dr. Wonder also gleaned additional information from the videotape, which confirmed her opinion. She pointed out Kakuk’s “intimacy problems” (inability to maintain three marriages), his attitude of seeing himself at no risk to reoffend and denial of an ongoing problem, his denial of having sex offender cycles, his feeling anger at his victims, and his inability to identify what his “triggers” were.
The public defender did not object to their opinion testimony, on the ground that the state experts had, in effect, conducted a compulsory mental examination of Ka-kuk under the umbrella of the right of a party under the civil rules to depose another party and use that deposition for “any purpose.”[9] Nor are we convinced that without the video deposition being played *1093 to the jury at trial, the result would have been different.
If the discovery provisions of the Rules of Civil Procedure are fully applicable to Jimmy Ryce commitment proceedings, it appears that the Legislature has enacted a useless and meaningless statute — section 394.9155(7)(a) and (b). As noted above, that provision appears to limit the power of the state to compel a mental health examination of a person in a Jimmy Ryce commitment proceeding, if that person is willing to suffer the consequences set forth in subsection (7)(a) and (b). However, as demonstrated by this case, the civil rules provide an easy by-pass around any protection afforded by those provisions, if they were intended to provide any, by allowing the state to conduct what is essentially a compulsory mental health examination via Rule 1.280 and then furnish it to the state’s mental health experts to use in formulating their opinions. In addition, although it did not occur in this case, Rule 1.360(a)(1)(B) is another avenue to mandate a compulsory mental health examination by the state’s mental health experts, based on the fact that the mental state of the person being considered for commitment is at issue. We submit that the Legislature should clarify the Jimmy Ryce statute regarding these ambiguities to provide guidance to the courts, because that Act is a special statutory proceeding created by the Legislature.[10]
AFFIRMED.
PLEUS, C.J., and GRIFFIN, J., concur.

. Florida Statutes, Chapter 394, Part V, refers to this Act as "sexually violent predators.” Osborne v. State, 907 So.2d 505 (Fla.2005) (also known as the Jimmy Ryce Act).

. The Standard Jury Instruction of Criminal Procedure was used in this case.
This is a civil case filed by the Petitioner, the State of Florida, against the Respondent, Gustav Kakuk. The State alleges the Respondent is a sexually violent predator and should be confined in a secure facility for long-term control, care, and treatment.
To prove the Respondent, Gustav Kakuk, is a — is a sexually violent predator, the State must prove each of the following three elements by clear and convincing evidence:
(A) Gustav Kakuk has been convicted of a sexually violent offense; (b) Gustav Kakuk suffers from a mental abnormality or personality disorder; and (c) the mental abnormality or personality disorder makes him likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.
A sexually violent offense is an attempted sexual battery or an attempted sexual battery by use or a threat of a deadly weapon.
Mental abnormality means a mental condition affecting a person’s emotional or volitional capacity which causes that person serious difficulty in controlling that person’s behavior and which predisposes the person to commit sexually violent offenses.
Likely to engage in acts of sexual violence means a person’s propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others.

. The requested, modified instruction was:
This is a civil case filed by the petitioner, the State of Florida, against the respondent, GUSTAV KAKUK. The State alleges the respondent is a sexually violent predator and should be confined in a secure facility for long-term control, care and treatment.
To prove the respondent, GUSTAV KA-KUK, is a sexually violent predator, the State must prove each of the following three elements by clear and convincing evidence:
a. GUSTAV KAKUK has been convicted of a sexually violent offense; and
b. GUSTAV KAKUK suffers from a mental abnormality or personality disorder; and
c. The mental abnormality or personality disorder causes GUSTAV KAKUK to have a special and serious difficulty in controlling [his] behavior, and when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, the mental abnormality or personality disorder must be sufficient to distinguish [him] from the dangerous recidivists convicted in ordinary criminal case, and
d.The mental abnormality or personality disorder makes [him] likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.
A sexually violent offense is an attempted sexual battery or an attempted sexual battery by use or threat of deadly weapon. "Mental abnormality” means a mental condition affecting a person's emotional or volitional capacity which causes a special and serious difficulty in controlling behavior. "Likely to engage in acts of sexual violence” means a person’s propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others.

. Florida Rule of Civil Procedure 1.360(a)(1) and (B), entitled "Examination of Persons” provides:
(a) Request; Scope.
(1) A party may request any other party to submit to, or to produce a person in that *1091 other party’s custody or legal control for, examination by a qualified expert when the condition that is the subject of the requested examination is in controversy.
[[Image here]]
(B) In cases where the condition in controversy is not physical, a party may move for an examination by a qualified expert as in subdivision (a)(1). The order for examination shall be made only after notice to the person to be examined and to all parties, and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

. § 394.9155(1), Fla. Stat.

. The "law” has been settled that these proceedings are "civil” in nature. See Kansas v. Hendricks, 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997); Westerheide v. State, 831 So.2d 93 (Fla.2002); Hudson v. State, 825 So.2d 460 (Fla. 1st DCA 2002).

. See Johnson v. Department of Children and Family Services, 747 So.2d 402 (Fla. 4th DCA 1999).

.The state also presented Dr. Duncan Bowen, who had treated Kakuk from July 1994 to May 1995, when Dr. Bowen terminated him because Kakuk was angry and argumentative in discussing his history or behaviors and because he had begun to engage in what Dr. Bowen considered "high risk” behavior for re-offending in the future.

.Fla. R. Civ. P. 1.330(a).

. In re Commitment of Sutton, 828 So.2d 1081 (Fla. 2d DCA 2002).