915 So.2d 264 (2005)
Watson MARSHALL, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-2797.
District Court of Appeal of Florida, Fourth District.
December 7, 2005.
*265 Carey Haughwout, Public Defender and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Sue-Ellen Kenny, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Appellant, Watson Marshall, timely appeals his civil commitment as a sexually violent predator. He raises numerous evidentiary errors, contending that the trial court erred in: (1) admitting victim hearsay statements to establish the factual basis for his underlying sexual crimes; (2) failing to find the Ryce Act hearsay exception unconstitutional; (3) admitting statistical evidence of screened prisoners recommended by the multidisciplinary team for involuntary commitment; and (4) permitting a psychologist to testify concerning the reasons a witness might not recall an act of sexual abuse committed during her childhood. For the reasons discussed below, we affirm.
Marshall was convicted of exposure of his sexual organs in 1998 and was scheduled for release from prison on this charge in March 2000. Before that time, the state filed a petition to civilly commit Marshall. The circuit court held a jury trial which revealed Marshall's lengthy history of sex crimes.
Marshall pleaded no contest to an attempted sexual battery which occurred in 1977. He confessed to rubbing grease on the anal and vaginal areas of a nine year old girl, inserting his finger in her vagina, and "accidentally" penetrating her with his penis when he was startled by her older sister coming in the room. Marshall was sentenced to thirty years for this sexual assault.
At the same time, Marshall pleaded no contest to indecent assault on another female child. For this conviction, he received a concurrent fifteen year sentence. Marshall was simultaneously convicted of two burglaries and battery on a police officer.
Marshall's niece testified that in 1992, when she was seventeen, on several occasions Marshall came into her bedroom naked at night when she was asleep with her kids. He would also come over to her house and rub himself through his pants *266 until he ejaculated, even after she told him to leave. Finally, in February 1993, when the niece was eighteen, Marshall forcibly raped her. She called the police, but Marshall soon left the Georgia town where the offense occurred and was never arrested for the offense.
Marshall was convicted of aggravated assault and sentenced to five years imprisonment for an event that occurred on May 31, 1993. Marshall lived in the apartment directly below Sharon Moore, who testified to the events of that day. On that day, Moore's nine-year old daughter, S.W., and S.W.'s younger sister went out to meet the ice cream truck. The younger daughter went ahead to meet the truck at the next block, but S.W. remained waiting downstairs, just a few feet from Marshall's front door. The younger daughter returned without S.W., saying she had left S.W. downstairs on the porch. Five to ten minutes later, S.W. returned, running, out of breath and upset, with watery eyes. S.W. said she had something to tell her mother, but said she felt dirty and needed to take a bath. She then started crying. Her mother let her take a bath. Fifteen minutes later, S.W. came out of the bathroom, still crying, and said that Marshall had snatched her inside his house and put his hand over her mouth to prevent her from screaming. He then put both his finger and his penis in her "private." She kicked him to get away and ran upstairs as fast as she could. As she was headed out the door, he threw a five dollar bill at her and told her not to tell her mother. He said that it would be their secret and that he would give her some more money when he got paid. Ms. Moore went downstairs to confront Marshall, but he did not answer his door. Moore then reported the matter to the police. She took S.W. to a rape center for counseling for a month and a half after the sexual battery.
Marshall called S.W. as a witness. By the time of trial, S.W. was 19 years old. She testified that she could not remember what happened and did not even remember talking to the police.
In rebuttal, the state called clinical psychologist, Dr. Eric Imhof. Marshall's counsel objected to Dr. Imhof's testimony on the ground that he had never interviewed S.W., and thus his testimony was "purely theoretical." The objection was overruled. Dr. Imhof testified that painful memories can be dissociated and forgotten. He testified that people can also feel pressured to deny an event, and can thus pretend that nothing happened. Additionally, some matters may be too embarrassing to discuss in front of strangers. Dr. Imhof acknowledged, however, the possibility that the events did not occur and that S.W. did not accurately report the events at the time.
Marshall committed two sexual offenses while in prison. He was convicted of aggravated assault for the August 21, 1993 attack on a prison inmate. The inmate, whose nose was still bleeding when officers responded to the scene, told the officers that Marshall struck him in the nose, turned him over, pulled down his pants, and inserted his finger in the inmate's rectum. A nurse practitioner who treated the victim testified that scratches and bleeding in the victim's rectum and redness around his anus were consistent with the victim's account of the attack. Marshall admitted this attack to Dr. Kevin Raymond, the licensed psychologist who interviewed Marshall on behalf of the State of Florida in connection with this Jimmy Ryce proceeding.
Marshall was also convicted of a January 23, 1994 aggravated assault on another prison inmate. Guards found this inmate dazed and confused on the floor of his cell. The victim said that Marshall had punched *267 him. The victim's uniform pants were pulled down, with his buttocks exposed. The victim said that Marshall had stuck something in his buttocks and that it felt as if it was still there. On closer examination, the deputy could barely see part of the bristle end of a toothbrush protruding from the victim's anus. The victim told the deputy that during the attack he felt the toothbrush go in and out of his anus several times. Marshall also admitted this attack to Dr. Raymond.
Prior to the civil commitment trial below, Marshall moved in limine to exclude unreliable hearsay evidence and to find the Jimmy Ryce Act's hearsay exception unconstitutional. He complained that the state relied extensively on hearsay testimony to establish its prima facie proof that appellant was a sexually violent predator. Specifically, he objected to the hearsay testimony of sheriff's deputies concerning appellant's anal assaults on the prison victims and to Sharon Moore's account of her daughter's statements about Marshall's sexual assault on her. Appellant premised his constitutional argument on the Confrontation Clause. The trial court denied the motion.
The jury determined that Marshall was a sexually violent predator. Based on that finding, the trial court entered its order committing Marshall. From this order, Marshall appeals.
Trial court determinations as to the constitutionality of a statute are reviewed de novo. Fla. Fish and Wildlife Conservation Comm'n v. Caribbean Conservation Corp., 789 So.2d 1053, 1054 (Fla. 1st DCA 2001).
The Jimmy Ryce Act provides for the involuntary commitment of persons convicted of sexual offenses who are found to be sexually violent predators. Westerheide v. State, 831 So.2d 93, 97 (Fla.2002) (plurality opinion). The Act requires a jury to find by clear and convincing evidence that the person is a violent sexual predator who has a mental abnormality that predisposes the person to commit sexually violent offenses and that the person is likely to re-offend if not confined to a secure facility. Id.
Civil commitment proceedings under the Jimmy Ryce Act are governed by the Florida Rules of Civil Procedure. § 394.9155(1), Fla. Stat. (2004). Under the Act, hearsay evidence may be introduced, although it may not be the sole basis for commitment. Jenkins v. State, 803 So.2d 783, 785 (Fla. 5th DCA 2001). The Act also provides, in pertinent part, that:
Hearsay evidence, including reports of a member of the multidisciplinary team or reports produced on behalf of the multidisciplinary team, is admissible in proceedings under this part unless the court finds that such evidence is not reliable. In a trial, however, hearsay evidence may not be used as the sole basis for committing a person under this part.
§ 394.9155(5), Fla. Stat. (2004).
The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." This constitutional provision is limited on its face to criminal proceedings. It does not apply to civil commitment proceedings. In re Commitment of Burton, 884 So.2d 1112, 1114 (Fla. 2d DCA 2004); In re Commitment of Cartwright, 870 So.2d 152, 156 (Fla. 2d DCA 2004); but see Jenkins v. State, 803 So.2d 783, 785 (Fla. 5th DCA 2001) ("Obviously [section 394.9155(5)] must be construed in light of the Fourteenth Amendment right of confrontation.")
*268 Here, the trial court properly found that the statements made by S.W. to Sharon Moore were excited utterances and, as such, were hearsay exceptions under Florida Statute Section 90.803(2). The court further found that the statements contained sufficient indicia of reliability. Similarly, the statements of the prison victims to officers, who were immediately on the scene of the assaults and saw the injuries, could qualify as excited utterances and meet the reliability test. Further, contrary to appellant's argument, the factual grounds for his prison assault convictions were not established solely through the hearsay testimony of law enforcement officers. These incidents were also established through appellant's own admissions.
In his opening statement, the state's attorney stated that the jury would hear that of the thousands of cases reviewed, only about 5% were ever filed for civil commitment under the Ryce Act. Dr. Patrick Cook, a licensed psychologist under contract with the Department of Children and Families to work in the sexually violent predator program on the multidisciplinary team, testified. The multidisciplinary team is comprised of four psychologists, plus one other psychologist or psychiatrist assigned to do the in-person interview of a prisoner. The team reviews the records provided by the Department of Corrections to determine whether a face-to-face evaluation is necessary. Over appellant's relevancy objection, Dr. Cook testified that, to date, 13,723 people with sexual offenses had been referred to them and 12,799 of them had been screened. Of that number, the team had recommended that 88% warranted no further action. As to 1,472 prisoners, the team thought their history was serious enough to require a face-to-face interview. Just under half of that total were then recommended for commitment proceedings, meaning that just 5.4% of the total number of screened individuals were considered by the team to require commitment for public safety reasons.
Dr. Raymond conducted appellant's face-to-face interview. He recommended civil commitment under the Ryce Act. The multidisciplinary team unanimously agreed with Dr. Raymond's finding and recommended the case to the state's attorney's office.
We agree with appellant that Dr. Cook's testimony regarding the multidisciplinary team's commitment recommendation statistics was not relevant. These statistics showing that appellant was within the small percentage of those recommended for commitment proceedings had no probative value in determining whether appellant met the statutory criteria for commitment as a sexually violent predator. However, based on our review of the record, the error in admitting this statistical evidence was harmless. See Pascale v. Fed. Express Corp., 656 So.2d 1351, 1353 (Fla. 4th DCA 1995) (the harmless error standard in a civil case is "whether, but for the error, a different result would have been reached.")
Appellant's final point on appeal concerns Dr. Imhof's testimony as to why a witness might not recall a sexual assault incident that occurred during childhood. Among other reasons Dr. Imhof gave for failure to recall, he testified that S.W.'s lack of memory would be consistent with survival of a traumatic event.
Florida Statute § 90.104(1)(a) provides that a reviewing court may reverse based on wrongfully admitted evidence only where there is a timely objection or motion to strike "stating the specific ground of objection if the specific ground was not apparent from the context." In this case, appellant's objection at trial to Dr. Imhof's *269 testimony was that the psychologist had not interviewed S.W. and that his testimony was therefore "theoretical." This argument was not sufficiently specific or precise within the meaning of section 90.104(1)(a) and different than the relevancy and improper bolstering grounds urged on appeal. As such, this issue was not properly preserved for appellate review. See Filan v. State, 768 So.2d 1100, 1101 (Fla. 4th DCA 2000) (holding that an issue or objection is preserved within the meaning of the statute governing appeals in criminal cases only if the objection was sufficiently precise that it fairly apprised the trial court of the grounds therefore).
Based on the foregoing, we affirm the sexually violent predator judgment and commitment order.
Affirmed.
WARNER and KLEIN, JJ., concur.