963 So.2d 780 (2007)
James PESCI, Appellant,
v.
STATE of Florida, Appellee.
No. 3D06-234.
District Court of Appeal of Florida, Third District.
July 18, 2007.
Rehearing Denied September 26, 2007.
*781 Bennett H. Brummer, Public Defender, Miami, and Robert Godfrey, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Richard L. Polin, Assistant Attorney General, Miami, for appellee.
Before RAMIREZ, CORTIAS, and ROTHENBERG, JJ.
ROTHENBERG, Judge.
The appellant, James Pesci ("Pesci"), appeals a final judgment finding him to be a sexually violent predator and civilly committing him for treatment pursuant to sections 394.910-394.932, Florida Statutes (2006), commonly referred to as the Jimmy Ryce Act ("Ryce Act"). The gravamen of Pesci's argument is based upon the admission of hearsay evidence regarding a prior offense Pesci had been charged with in New York. Although we find that the trial court did not abuse its discretion in admitting this hearsay evidence, we conclude that based on the substantial unobjected-to evidence presented, that any error in the introduction of the objected-to evidence *782 was harmless beyond a reasonable doubt. We, therefore, affirm.
In 1996, Pesci was arrested and charged with committing a sexual offense in New York. After posting bond and being released pending trial, Pesci absconded, fled to Florida, and changed his name.[1]
In 1997, Pesci was charged with a sexual battery, grand theft auto, and resisting arrest without violence, in Key West. On February 11, 1999, Pesci pled guilty to the charges, and he was sentenced to five years incarceration followed by five years of probation for the sexual battery offense and to concurrent incarcerative sentences for the two remaining offenses. Because the facts regarding the Key West sexually battery are not in dispute and are relevant to our decision, they will be addressed herein.
Pesci met the victim at a restaurant where they had several drinks together. After consuming several more drinks at a bar, they proceeded to the victim's hotel room. Although the victim initially agreed to have sex with Pesci, when she learned that he did not have a condom with him, the victim withdrew her consent. This angered Pesci. What followed was a seven to eight hour assault by Pesci upon the victim. He raped her vaginally and anally and forced the victim to perform oral sex on him. Pesci additionally beat and choked the victim. He placed a dog leash around the victim's neck and made her crawl around on the floor like a dog while he whipped her buttocks with a belt. After enduring this abuse for many hours, the victim offered Pesci her money, jewelry, and traveler's checks, and she promised not to call the police. Pesci left with these offerings and the victim's car to purchase some cigarettes. Before leaving, however, he ordered the victim to face the wall and count to 200. He warned her that if she turned around before counting to 200, he would bash her head in. He told her he was a member of the "New York mob" and if she did not comply with his demands, he would have her killed. When Pesci left, the victim summoned help and Pesci was arrested.
Shortly before Pesci's scheduled release from prison, the State filed a petition seeking the involuntary civil commitment of Pesci as a sexually violent predator under the Ryce Act. The trial court entered an order finding that probable cause existed to believe that Pesci is a sexually violent predator and, therefore, eligible for civil commitment; ordered the Department of Children and Family Services ("DCF") to take custody of Pesci upon his release from prison; and set the matter for an involuntary civil commitment trial.
Prior to the commencement of the civil commitment trial, Pesci moved to exclude any hearsay evidence regarding the sexual offense Pesci had been charged with in New York in 1996. Specifically, the defense sought to prevent the State's experts from referring to and relying on the facts contained in the police reports detailing the New York incident, arguing that because Pesci had not been convicted of this offense, the evidence was unreliable and, therefore, should not be admitted nor relied upon by the State's experts. Defense counsel argued that because the alleged victim of the New York sexual assault was not going to testify, he would only be able to cross-examine the experts who had no firsthand knowledge of the events; the hearsay evidence was inherently unreliable; and his due process right to confrontation would be violated. The trial court denied Pesci's motion to exclude this hearsay evidence and the jury ultimately found *783 that Pesci qualified to be designated as a sexually violent predator in need of civil commitment.
At Pesci's civil commitment trial, the State presented evidence regarding the Key West sexual battery Pesci pled guilty to. Pesci did not and does not object to the introduction of that evidence. The State additionally presented two expert witnesses, Dr. Karen Parker and Dr. Eric Jensen.
Dr. Parker
Dr. Parker testified that based upon her evaluation of Pesci, she concluded that he is a psychopath, who additionally suffers from an antisocial personality disorder and paraphilia, a sexual disorder, and that she considers him to be a "very dangerous person." In reaching these conclusions, she reviewed the Key West offense, which revealed sadistic components to the assault. Dr. Parker explained that while rapists may use physical force, there is a point at which the level of injury, torture, and fear becomes "highly abnormal and have what we call sadistic components," and that she found examples of sadistic sexual behavior present during the commission of the sexual assault in Key West. She noted that the violence dominated the Key West sexual assault; that Pesci demonstrated his need for power and to control and hurt the victim; and he was enjoying himself throughout the assault. Dr. Parker testified that Pesci's disorder is a serious one.
Dr. Parker testified that Pesci "appeared to have definite psychopathic tendencies," and explained that "[p]sychopaths are people who are very exploitive, glib, very self-assured, but basically look at the world as a target for their exploitation, what they want out of the world." Regarding Dr. Parker's conclusion that Pesci suffers from an antisocial personality disorder, she noted that individuals suffering from this disorder usually start exhibiting certain behavioral traits before the age of fifteen, and this behavior does not "fall off" as it does with other teenagers as they reach eighteen or nineteen. Instead, it gets worse and it becomes a lifestyle. Dr. Parker noted that Pesci had significant behavioral problems as a child, was out of control, and was placed in a "boy's school" at the age of ten, where he remained until age sixteen. After leaving the "boy's school," Pesci committed an arson, and while on parole for that offense, he committed several violations.
Dr. Parker additionally recounted Pesci's arrest in New York, approximately six months before he committed the sexual assault in Key West. She explained that Pesci was in a movie parking lot with a woman when he allegedly exposed his penis and asked the woman to perform oral sex on him; that the woman ordered Pesci out of her car; and when he saw that people were coming out of the movie, he exited the car and left. Pesci was arrested based upon these allegations, but when he did not remain in New York to answer the charges, an arrest warrant was issued on November 15, 1996, and it is still pending. Dr. Parker readily admitted that because Pesci fled New York, these were just allegations taken from the police reports and that she knew nothing about the woman who lodged the complaint.
Lastly, Dr. Parker explained the various tests performed on Pesci, which revealed: (1) a risk of recidivism of 40-52% within fifteen years based upon the Static 99 test; (2) a high risk of sexually violent recidivism of 57% within a six-year period based upon the MnSOST test; and (3) a very high match for diagnosis as a psychopath.
Dr. Jensen
Dr. Jensen also diagnosed Pesci as suffering from an antisocial disorder and paraphilia, *784 and like Dr. Parker, noted the early onset of behavioral problems, including truancy, glue sniffing, shoplifting, and Pesci's wild and uncontrollable behavior which resulted in his placement in a boy's home at the age of ten. He provided a chronology of Pesci's life beginning with his release from the boy's home at the age of sixteen; his convictions for two counts of arson related to an insurance fraud scheme; his conviction for assault; his parole violations for using alcohol and marijuana, giving a false name to the police, and for not complying with his curfew; and his DUI convictions in 1990. With regard to the New York arrest in 1996, Dr. Jensen provided the jury with both the allegations taken from the police reports and Pesci's version of the events, which he obtained from Pesci when he interviewed him. Pesci admitted most of what was contained in the police reports. He admitted to parking in the public parking lot, becoming excited, exposing his penis, masturbating himself, and asking her to perform oral sex on him. He told Dr. Jensen that he had a funny feeling that the woman was going to report the incident to the police and that he was relieved that she described the incident accurately. The only real variance between the police reports and Pesci's version is that Pesci denied using any force and claimed that it was merely a case of "misinterpreting the signals."
Dr. Jensen testified that Pesci has been incarcerated thirty-five out of thirty-seven years of his adult life; that he violated his parole several times; and that during Pesci's stay at the civil commitment center, there have been various violations, all which support a finding that there has been no change in Pesci's personality disorder. At the civil commitment center, Pesci has had unauthorized contact with females outside of the facility and many of those communications are sexual in nature; started a chain letter to women enlisting their support for his cause; was found to be in possession of marijuana; and has verbally threatened the staff.
Along with the results of his testing, which showed Pesci to be a high risk for sexually violent recidivism, Dr. Jensen found Pesci to be a very charming, glib, conniving, and manipulative person with a criminal versatility, in that he has committed crimes in many different areas over a long period of time. He explained that Pesci's pattern of behavior demonstrates his lack of volitional control, and his inability to conform his behavior to the law despite the negative consequences. Moreover, Pesci refuses to acknowledge he has a problem and he shows no insight with regard to his need for treatment. Based upon his complete evaluation, Dr. Jensen recommended civil commitment.
Dr. Brown and Dr. Merwin
The defense presented the expert testimony of Dr. Natalie Brown and Dr. Jack Merwin. Both opined that Pesci was not a sexually violent predator and did not meet the statutory criteria for involuntary civil commitment. Dr. Brown, in forming her opinion, relied on the same documents relied on by the State's experts as well as Dr. Jensen's and Dr. Parker's reports on Pesci. Dr. Brown also interviewed and evaluated Pesci, conducted a penile plethysmograph in order to test Pesci's sexual arousal pattern, had a polygraph test administered to Pesci, and interviewed Pesci's sister and fiancÈ. Dr. Brown emphasized that the main reason her opinion differed from the State's experts was because of her evaluation of the 1996 New York incident. In her opinion, the allegations contained in the New York police reports were very weak and contained no corroboration. Dr. Brown noted that without taking into account this New York *785 offense, Pesci could not be diagnosed with paraphilia because "for any of the sexual disorders . . . it's required that there be evidence of intense recurrent manifestations of the disorder . . . and in his case we only have one act of sexual violence." Dr. Brown, however, acknowledged that Pesci did suffer from antisocial personality disorder. Similarly, Dr. Merwin testified that, although Pesci suffered from antisocial personality disorder, he did not believe that Pesci would be likely to reoffend in a sexually violent manner.

LEGAL ANALYSIS
In this appeal, Pesci challenges the trial court's admission of the hearsay evidence regarding the New York offense arguing that (1) the hearsay evidence had no indicia of reliability and, therefore, was inadmissible; (2) in admitting the hearsay evidence, his constitutional due process right to confrontation was violated as he had no opportunity to confront the accusations leveled against him by his New York accuser; and (3) absent the admission of this hearsay evidence, the State's experts could not have reached a diagnosis of paraphilia as there would be no pattern of misconduct to base it on and, therefore, no basis for Pesci's commitment. We disagree.
We begin our review with recognition of our standard of review. A trial court's ruling on the admissibility of evidence will not be disturbed absent a finding that the trial court abused its discretion. Carpenter v. State, 785 So.2d 1182, 1201 (Fla. 2001).

Reliability Issue
Pesci recognizes that section 394.9155(5), Florida Statutes (2006), allows the introduction of hearsay evidence under the Ryce Act. He, however, asserts that the trial court abused its discretion in admitting the hearsay evidence regarding the New York offense because the State did not prove its reliability. This, however, is not the standard by which a trial court admits hearsay evidence under the Ryce Act. Section 394.9155, Florida Statutes (2006), specifies, in part, that:
(4) The court may consider evidence of prior behavior by a person who is subject to proceedings under this part if such evidence is relevant to proving that the person is a sexually violent predator.
(5) Hearsay evidence, including reports of a member of the multidisciplinary team or reports produced on behalf of the multidisciplinary team, is admissible in proceedings under this part unless the court finds that such evidence is not reliable. In a trial, however, hearsay evidence may not be used as the sole basis for committing a person under this part.
ß 394.9155(4)-(5), Fla. Stat. (2006)(emphasis added).
The record reflects that the trial judge carefully analyzed the hearsay evidence regarding the New York offense, considered Pesci's objections, and ultimately concluded that the hearsay evidence had sufficient indicia of reliability to permit its admission. Except for the non-consensual aspect of the sexual encounter, Pesci admitted to the psychologists the accuracy of most of the hearsay evidence that was presented and this hearsay evidence was not the sole basis for Pesci's commitment. Furthermore, before admitting this evidence, the trial court considered the fact that Pesci, rather than disputing the charges and confronting his accuser in New York, chose to flee the jurisdiction of the court and changed his name. See Escobar v. State, 699 So.2d 988 (Fla.1997), abrogated on other grounds by Connor v. State, 803 So.2d 598 (Fla.2001)(finding that flight from pending criminal charges constitutes evidence of consciousness of guilt). We, therefore, conclude that the trial court *786 did not abuse its discretion in admitting the hearsay evidence regarding the New York offense. See Sloss v. State, 925 So.2d 419, 423 (Fla. 5th DCA 2006)(concluding that the trial court properly admitted hearsay evidence pursuant to section 394.9155(5) as the defendant did not dispute the accuracy or reliability of much of the hearsay evidence and the hearsay evidence was not the sole basis for the defendant's commitment); see also In re Commitment of Rodgers, 875 So.2d 737, 740 (Fla. 2d DCA 2004)(holding that the trial court did not abuse its discretion in allowing the admission of hearsay evidence regarding the defendant's prior bad acts and criminal offenses and thereby allowing the State's expert to rely on the evidence to form his opinion); Lee v. State, 854 So.2d 709, 713 (Fla. 2d DCA 2003)(finding that the trial court did not err in admitting hearsay evidence under section 394.9155(5) since the statute allows the admission of hearsay evidence in civil commitment cases unless the trial court finds the evidence to be unreliable, the trial court carefully analyzed the hearsay evidence offered by the State, the defendant did not dispute the accuracy of the hearsay evidence, and the hearsay evidence was not the sole basis of the defendant's civil commitment).

Pesci's Reliance on Jenkins
Despite the clear language of section 394.9155(5) and the cases already addressed in this opinion, Pesci asserts that pursuant to Jenkins v. State, 803 So.2d 783 (Fla. 5th DCA 2001), his civil commitment must be reversed. We disagree as we find the instant case distinguishable and the language Pesci relied upon in Jenkins to be dicta.
Jenkins' civil commitment was reversed because it was based almost exclusively on hearsay contained in police reports from cases in which Jenkins had not been convicted. In contrast, Pesci's commitment order was not based almost exclusively on the hearsay evidence contained in the New York police reports.[2] There was substantial non-hearsay evidence demonstrating that Pesci had a dangerous and violent personality disorder and was likely to reoffend in a sexually violent manner. Furthermore, Pesci did not dispute the accuracy of most of the underlying facts contained in the New York police reports. Jenkins is, therefore, clearly distinguishable. See Masters v. State, 958 So.2d 973, 976 (Fla. 5th DCA 2007)(finding Jenkins inapplicable since the civil commitment order was not based solely on hearsay evidence); see also Williams v. State, 841 So.2d 531, 532 (Fla. 2d DCA 2003)(distinguishing Jenkins on the ground that Jenkins' commitment was based solely on hearsay evidence).

Pesci's Constitutional Challenge
Pesci also argues that the admission of the objected-to hearsay evidence violated his due process right to confrontation under the Fourteenth Amendment of the United States Constitution and the parallel provision of the Florida Constitution. In support thereof, Pesci again relies on Jenkins for the proposition that although hearsay evidence is admissible under section 394.9155(5), Florida Statutes, "this statute must be construed in light of the Fourteenth Amendment right to confrontation." See Jenkins, 803 So.2d at 785. However, the Fifth District Court of Appeal, which is the same court that decided Jenkins, recently acknowledged that it was not bound by this language in Jenkins, as it was merely dictum. "We are not bound by this language in Jenkins because it is *787 dictum." Masters, 958 So.2d at 977. The Fifth District in Masters also noted that a majority of Florida courts have "held that the constitutional right of confrontation does not bar the admission of hearsay evidence in civil commitment proceedings." Id. (citing Marshall v. State, 915 So.2d 264, 267 (Fla. 4th DCA 2005) and In re Commitment of Burton, 884 So.2d 1112, 1114 (Fla. 2d DCA 2004)).
Similarly, we are not bound by the language in Jenkins, which suggests that "section 394.9155(5) must be construed in light of the Fourteenth Amendment right of confrontation," and agree with the Florida courts which have consistently held that the Confrontation Clauses of both the United States and Florida Constitutions are expressly limited to criminal prosecutions and are therefore, inapplicable to civil commitment proceedings under the Ryce Act. See In re Commitment of Cartwright, 870 So.2d 152, 156 (Fla. 2d DCA 2004)(The Confrontation Clauses of both the United States and Florida Constitutions are expressly limited to "criminal prosecutions."); see also Marshall v. State, 915 So.2d 264, 267 (Fla. 4th DCA 2005)(holding that the Sixth Amendment's Confrontation Clause is limited on its face to criminal proceedings and does not apply to civil commitment proceedings, such as civil commitment proceedings under the Ryce Act); In re Commitment of Burton, 884 So.2d 1112, 1114 (Fla. 2d DCA 2004)(rejecting defendant's argument that the admission of hearsay under section 394.9155(5) is unconstitutional because it violated his right to confrontation under the United States and Florida Constitutions).
In the instant case, we find that Pesci's due process rights were not violated. While Pesci was not convicted of the offense in New York, he was charged and the case is still pending. Pesci's attempts to evade prosecution by fleeing to Florida and changing his name, coupled with his admissions to nearly everything contained in the police reports, and his statement to Dr. Jensen that he was relieved that the victim told the police the truth, establishes a sufficient indicia of reliability to allow its introduction in Pesci's civil commitment trial. Additionally, Pesci was notified in advance of the trial that the State intended to introduce this evidence, thereby affording Pesci an opportunity to call the complaining witness himself. Pesci, therefore, made a choice, actually two choices, not to confront the evidence against him. Lastly, Pesci was permitted to cross-examine the doctors regarding the evidence and clearly established that the information regarding the New York incident was untested hearsay. Under these circumstances, we find no due process violation.

Harmless Error Analysis
While we have concluded that the introduction of the hearsay evidence regarding the incident in New York was not error, even if we had concluded otherwise, we would affirm because its introduction was harmless beyond a reasonable doubt.
All four of the medical experts, two called by the State and two called by the defendant, testified that Pesci suffers from an antisocial personality disorder, and Drs. Parker and Jensen additionally concluded that Pesci is a psychopath. These conclusions are supported by competent substantial evidence. Pesci's antisocial and behavioral problems began at an early age and continued throughout his life, escalating in severity and manifesting itself in violent, sadistic, and sexual criminal behavior. Despite incarceration and supervision, Pesci has been unwilling or incapable of controlling his actions, despite the negative consequences. The Key West sexual battery was extremely violent and sadistic. *788 He is manipulative, controlling, and looks at the world as a target. The tests performed reveal a high risk of sexually violent recidivism and a high match for a diagnosis that Pesci is a psychopath. Even while housed at the commitment center awaiting his commitment trial, Pesci committed various violations, had unauthorized contact with females outside of the facility, wrote them sexually explicit letters, and verbally threatened the staff. Based upon the unusually violent and sadistic actions committed by Pesci in the undisputed Key West sexual assault, acts he enjoyed and which included torture and sexually deviant components, coupled with his long-standing mental abnormality (antisocial personality disorder), we conclude that any error in the introduction of the complained-of hearsay evidence is harmless beyond a reasonable doubt. This finding is further supported by the fact that Pesci admitted to most of what was contained in the police reports regarding the New York incident, the doctors provided the jury with Pesci's version of the events, and the experts specifically testified that these reports contained allegations that had not yet been tested. Additionally, Pesci's acts, fleeing the jurisdiction and changing his name to avoid confronting his accuser, establish their reliability.
Affirmed.
CORTIAS, J., concurs.
RAMIREZ J, concurring.
I can only concur in the result reached by the majority. I cannot agree with the opinion, particularly as it attempts first to distinguish Jenkins v. State, 803 So.2d 783 (Fla. 5th DCA 2001), and second to find that the relevant language was dicta. The fact remains that a significant part of the evidence, and one which was relied upon by the State's experts, was a prior incident in New York. Pesci argued that his sexual contact with the victim was consensual. The court in Jenkins stated:
The legislature has determined that in Jimmy Ryce Act trials, hearsay evidence may be introduced even though it may not be the sole basis for commitment. See Section 394.9155(5), Fla. Stat. Obviously this statute must be construed in light of the Fourteenth Amendment right of confrontation. The Florida Legislature cannot, nor do we believe it intended to, rescind the due process protections of the United States Constitution. Courts must recognize the distinction between police reports which contain unchallenged and unchallengeable prejudicial hearsay and police reports which relate to cases in which the respondent has pled or has been convicted. It is only the latter which have an indicia of reliability.
Id. at 785. It is undisputed that Pesci was never convicted for the prior incident.
Here, the State's two expert witnesses diagnosed Mr. Pesci as having a paraphilia not otherwise specified of non-consenting partners. A diagnosis of paraphilia, all experts agreed, requires a pattern of sexual misconduct lasting for at least six months. The State's experts found a pattern here by combining the 1997 Key West case with the 1996 New York case. The former had indicia of reliability in the form of a guilty plea from Pesci and several sworn depositions from other witnesses. The 1996 New York case, in contrast, had no such indicia of reliability. There was no conviction. There were no sworn statements. There was no testimony from anyone involved in the New York case. Instead, the State's experts testified about the events based on the alleged victim's version contained in the unsworn police reports and the charging document. Therefore, I cannot agree that Jenkins is *789 either distinguishable or that the language quoted above is dicta.
I concur in affirming the trial court, however, because I can find no abuse of discretion in its ruling that the hearsay evidence was sufficiently reliable, despite the fact that Pesci was not convicted for the New York incident. The trial court considered the fact that while Pesci was out on bond, he fled the jurisdiction and changed his name. He did not contest the fact that he had sex with the victim, only that it was consensual. But in my view, the majority's attempt to distinguish Jenkins is hairsplitting. I would certify conflict.
NOTES
[1] In New York, Pesci used the name "Zientek."
[2] It seems disingenuous to us that Pesci even asserts this argument. Pesci did not plead to the New York offense or was not convicted of the offense because after he posted bond, he absconded to Florida and avoided prosecution for the offense.