253 P.3d 394 (2011)
161 Wash.App. 66
In re the DETENTION OF Clinton MORGAN, Appellant.
No. 38337-3-II.
Court of Appeals of Washington, Division 2.
April 8, 2011.
As Amended on Denial of Reconsideration June 1, 2011.
*396 Nancy P. Collins, Washington Appellate Project, Seattle, WA, for Appellant.
Joshua Choate, Office of the Washington State Attorney, Seattle, WA, for Respondent.
QUINN-BRINTNALL, J.
¶ 1 Clinton Morgan appeals a 2008 jury determination that he is a sexually violent predator (SVP), under ch. 71.09 RCW, and his resulting civil commitment. Morgan asserts that a 2006 chambers meeting, which he did not attend, discussing the possibility of forcibly medicating him during the commitment proceedings, violated (1) his right to personally attend all proceedings to assist his counsel and (2) his Washington constitutional right to open proceedings. In addition, he argues that the trial court violated his due process rights when it (1) held his SVP civil commitment jury trial despite his incompetence and (2) forcibly medicated him during the proceedings. Finally, Morgan claims that paraphilia not otherwise specified (NOS) (nonconsent) is an invalid diagnosis that could not form the basis for his civil commitment. We hold that the 2006 chambers meeting concerned purely ministerial and legal matters and did not violate any of Morgan's rights, Morgan's procedural due process rights were not violated by holding SVP proceedings despite his incompetence, the record is not adequately developed to consider the alleged forced medication error, and Morgan failed to preserve for review his challenge to an expert's diagnosis. We affirm.

FACTS
¶ 2 Morgan, who was born on February 25, 1980, pleaded guilty to indecent liberties in 1993. This juvenile adjudication stemmed from a school incident in which Morgan prevented 15-year-old J.W., a stranger to him at the time, from leaving a classroom while he forcibly kissed her, grabbed her breasts, and rubbed her other private parts. The juvenile court sentenced Morgan to 65 weeks in a Juvenile Rehabilitation Administration program. As part of his rehabilitation program, Morgan participated in sexual deviancy treatment during which he disclosed problems distinguishing between fantasy and reality; masturbating to rape fantasies; and having sadistic sexual fantasies involving murder, humiliation, and disfigurement. After his release in 1994, Morgan continued receiving community based sex offender treatment until early 1997.
¶ 3 In 1997, approximately two weeks after completing a sex offender treatment program, Morgan molested two girls at a hotel swimming pool while pretending to be a lifeguard. Six-year-old K.S. told her parents that Morgan had touched her chest area and between her legs. Five-year-old R.B. told her parents that Morgan had been "tickling her on her `peepee' on the outside of her swimming suit." Clerk's Papers (CP) at 5. An adult at the pool witnessed Morgan touching R.B. on her back and buttocks and observed that Morgan had an erection when he got out of the pool after touching R.B. Morgan later stated that he just wanted to see if he could handle being around children, but things "got out of hand" once he touched the girls and that he "had no control over the situation, period." 2 Report of Proceedings (RP) at 255.
¶ 4 Morgan pleaded guilty to one count of first degree child molestation for the swimming pool incident and received an 89-month sentence.[1] During his incarceration, Morgan was moved to the Special Offender Unit at the Monroe Correctional Complex after he developed psychotic symptoms. While at Monroe, he completed a sex offender treatment program making limited rehabilitative progress. Even after completing treatment, the program considered Morgan as having a high risk of reoffending.
*397 ¶ 5 On August 31, 2004, the day before his scheduled release into the community, the State filed a petition seeking Morgan's involuntary commitment as an SVP. The petition alleged in pertinent part as follows:
1. [Morgan] has been convicted of the following sexually violent offense(s), as that term is defined in [former] RCW 71.09.020(15) [(2003)]: On or about May 30, 1997, in Grays Harbor County Superior Court, Grays Harbor, Washington, [Morgan] was convicted of Child Molestation in the First Degree.
2. [Morgan] currently suffers from:
a) A mental abnormality, as that term is defined in [former] RCW 71.09.020(8) [(2003)], specifically: Paraphilia NOS (Non-Consent); Pedophilia, Sexually Attracted to Females, Nonexclusive Type; and provisionally Sexual Sadism; and
b) A personality disorder, specifically: Antisocial Personality Disorder.
3. [Morgan's] mental abnormality and personality disorder cause him to have serious difficulty in controlling his dangerous behavior and make him likely to engage in predatory acts of sexual violence unless confined to a secure facility.
CP at 1-2. Over the next four years, the parties requested various continuances and addressed a variety of issues not relevant to this appeal. During this time, Morgan lived at the Special Commitment Center (SCC) on McNeil Island.
¶ 6 In February 2006, at Morgan's counsel's request, the trial court held a hearing to determine Morgan's competency for his SVP trial. Morgan's expert witness opined that he was not competent. The trial court determined that Morgan was not competent and expressed "very great concerns regarding the ability of Mr. Morgan to assist in [his] representation in these matters." RP (Feb. 23, 2006) at 9. Primarily based on their understanding of In re Detention of Greenwood, 130 Wash.App. 277, 122 P.3d 747 (2005), review denied, 158 Wash.2d 1010, 143 P.3d 830 (2006), Morgan's attorney, the State, and the trial court agreed that, in civil commitment hearings, a person does not have to be competent for a matter to proceed. But the parties and trial court agreed that a guardian ad litem (GAL) should be appointed to represent Morgan's interests. On April 19, 2006, the trial court entered its final order appointing Morgan a GAL under RCW 4.08.060.
¶ 7 In June 2006, Morgan's attorney asked that Morgan be forcibly medicated to control his behavior during the SVP proceedings. The trial court initially granted the motion in an oral ruling, but then accepted the State's request to take more evidence and weigh different interests before entering a final ruling. On August 30, the trial court discussed the forced medication motion process in chambers. The trial judge, a court reporter, and the GAL were physically present in the trial court's chambers. The State's and Morgan's attorneys were present via phone. Morgan was not present. The State reviewed the trial court's standard for ruling on the medication motion. Morgan's attorney asserted that, without medication, Morgan's behavior would prejudice the jury. The GAL recommended learning whether medication might help control Morgan's disruptive and delusional outbursts and noted that "Morgan himself is violently [and] vehemently against any kind of involuntary medication." RP (Aug. 30, 2006) at 31. Ultimately, the trial court decided to delay ruling on the merits of the motion until after receiving more information, including a report from Morgan's psychiatrist and an update from the GAL.
¶ 8 SCC psychiatrist Dr. Leslie Sziebert's subsequent report detailed Morgan's medication history over the years. Sziebert noted that Morgan presently was not taking any medication and had not taken antipsychotic medication for the past 17 months (since April 2005). She opined about the efficacy of involuntary medication in Morgan's case and indicated that Morgan did not meet the SCC's requirements for being involuntarily medicated because he did not have a grave disability or present a danger to himself or others. After reviewing Sziebert's report, the GAL recommended to the trial court, over Morgan's acknowledged objections, that it forcibly medicate Morgan during his civil commitment hearing. On December 6, 2006, the trial court entered a written order to involuntarily medicate Morgan.
*398 ¶ 9 Morgan's civil commitment trial did not begin until August 4, 2008.[2] At the trial, the State's expert, Dr. Brian Judd, explained his diagnosis of Morgan as presently suffering from (1) paraphilia NOS (nonconsent); (2) pedophilia, sexually attracted to females, non-exclusive type; (3) antisocial personality disorder; and (4) schizophrenia. Morgan's expert, Dr. Wollert, disagreed with several of Judd's diagnoses and testified that Morgan's brain had likely matured since his offenses, lowering his recidivism risk. The jury entered a verdict finding that Morgan met the definition of an SVP. Morgan timely appeals.

ANALYSIS

RIGHT TO ATTEND THE 2006 CHAMBERS MEETING
¶ 10 Morgan asserts that he had a right to attend the 2006 chambers meeting where the trial court considered issues related to forcibly medicating him. Specifically, he argues that former RCW 71.09.050(1) (1995) includes an implicit right to attend the meeting to assist his counsel and that failing to include him violated his due process rights. The State argues that Morgan's counsel's and GAL's presence at the meeting adequately protected his due process rights. We discern no error.
¶ 11 "A defendant has the right to be present at proceedings where his or her presence has a reasonably substantial relation `to the ful[l]ness of his opportunity to defend against the charge.'" In re Pers. Restraint of Pirtle, 136 Wash.2d 467, 483, 965 P.2d 593 (1998) (internal quotation marks omitted) (quoting In re Pers. Restraint of Lord, 123 Wash.2d 296, 306, 868 P.2d 835, cert. denied, 513 U.S. 849, 115 S.Ct. 146, 130 L.Ed.2d 86 (1994)). But a defendant "`does not have a right to be present during in-chambers or bench conferences between the court and counsel on legal matters.'" Pirtle, 136 Wash.2d at 484, 965 P.2d 593 (quoting Lord, 123 Wash.2d at 306, 868 P.2d 835); see also Snyder v. Massachusetts, 291 U.S. 97, 106-07, 54 S.Ct. 330, 78 L.Ed. 674 (1934) (a defendant does not need to be present "when presence would be useless, or the benefit but a shadow"), overruled on other grounds by Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).
¶ 12 Morgan did not have a right to personally attend the chambers meeting where purely legal questions about the process of deciding a forced medication motion were discussed. As the transcript of the chambers meeting evinces, the meeting included a discussion of the legal standard that the trial court should apply when ruling on the involuntary medication motion and whether the trial court had adequate information to rule on the motion. No ruling was made during the meeting, and Morgan's presence would not have influenced the ultimate outcome of the matters discussed at the meeting.[3] Accordingly, Morgan's rights were represented fully and not violated by his lack of attendance at the meeting.
¶ 13 Morgan also asserts that former RCW 71.09.050(1) includes an implicit right *399 for him to attend this meeting. In relevant part, former RCW 71.09.050(1) provides that "[a]t all stages of the proceedings under this chapter, any person subject to this chapter shall be entitled to the assistance of counsel." Morgan claims that he must be present at all proceedings in order to receive assistance of counsel. This argument fails because when a purely legal matter is under consideration, Morgan's presence is irrelevant to the proceedings. Pirtle, 136 Wash.2d at 484, 965 P.2d 593; see State v. Sadler, 147 Wash.App. 97, 114, 193 P.3d 1108 (2008). Morgan received the assistance of his counsel on the legal questions at hand despite his physical absence from the meeting.

PUBLIC TRIAL RIGHTS
¶ 14 Morgan next contends that the trial court's 2006 chambers meeting also violated his right to open proceedings under the Washington Constitution, article I, section 10. Specifically, he argues that the trial court failed to consider and apply the five courtroom closure steps in Seattle Times Co. v. Ishikawa, 97 Wash.2d 30, 37-39, 640 P.2d 716 (1982). Assuming without deciding that Morgan has standing to raise this issue and may do so for the first time on appeal, we discern no error.[4]
¶ 15 Article I, section 10 of the Washington Constitution requires that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." "`Whether a trial court procedure violates the right to a public trial is a question of law we review de novo.'" In re Det. of D.F.F., 144 Wash.App. 214, 218, 183 P.3d 302 (quoting State v. Duckett, 141 Wash.App. 797, 802, 173 P.3d 948 (2007)), review granted, 164 Wash.2d 1034, 197 P.3d 1185 (2008).[5] Accordingly, this standard applies to civil as well as criminal appeals. Dreiling v. Jain, 151 Wash.2d 900, 908, 93 P.3d 861 (2004); D.F.F., 144 Wash. App. at 218, 183 P.3d 302.
¶ 16 We have previously held that the right to a public trial applies to evidentiary phases of the trial as well as other "`adversary proceedings,'" including suppression hearings, voir dire, and the jury selection process. Sadler, 147 Wash.App. at 114, 193 P.3d 1108 (emphasis omitted) (quoting State v. Rivera, 108 Wash.App. 645, 652-53, 32 P.3d 292 (2001), review denied, 146 Wash.2d 1006, 45 P.3d 551 (2002)). But that right does not extend to purely ministerial and procedural matters because "[a] defendant does not ... have a right to a public hearing on purely ministerial or legal issues that do not require the resolution of disputed facts." Sadler, 147 Wash.App. at 114, 193 P.3d 1108. We affirmed this proposition recently in State v. Sublett, 156 Wash.App. 160, 181, 231 P.3d 231, review granted, 170 Wash.2d 1016, 245 P.3d 775 (2010). Division Three of this court agreed that public trial rights were not violated in a pretrial hearing addressing only legal matters, specifically the exclusion of a witness and whether the State could impeach the defendant. State v. Castro, 159 Wash. App. 340, 344, 246 P.3d 228 (2011). And recently, Division One discussed the deep-rooted history of the in-chambers ministerial and legal matter exception to constitutional public trial rights and applied it in the SVP civil commitment setting. In re Det. of Ticeson, *400 159 Wash.App. 374, 383-87, 246 P.3d 550 (2011).
¶ 17 Here, the chambers meeting about the standard for the trial court to apply when deciding whether to forcibly medicate Morgan concerned purely legal and procedural matters. Because the chambers meeting here solely addressed ministerial matters regarding legal questions related to the process of deciding the defendant's counsel's forced medication motion, it did not implicate Morgan's public trial rights.

RIGHT TO COMPETENCY DURING SVP Proceedings
¶ 18 Morgan argues that the State cannot seek to commit him as an SVP under ch. 71.09 RCW while he is incompetent because it violates his due process rights. Specifically, he asserts a general right to competency during SVP proceedings to ensure that he understands them and has the ability to assist his attorney. We hold that a respondent's due process rights are not violated when he or she is incompetent during SVP proceedings.
¶ 19 We review questions of law, including the guaranty of constitutional due process, de novo. In re Det. of Fair, 167 Wash.2d 357, 362, 219 P.3d 89 (2009) (citing Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n, 149 Wash.2d 17, 24, 65 P.3d 319 (2003)). "[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); see also In re Harris, 98 Wash.2d 276, 279, 654 P.2d 109 (1982) ("[D]ue process guaranties must accompany involuntary commitment for mental disorders.").
¶ 20 Procedural due process prohibits the State from depriving an individual of protected liberty interests without appropriate procedural safeguards.[6]In re Pers. Restraint of Bush, 164 Wash.2d 697, 704, 193 P.3d 103 (2008). Procedural due process "[a]t its core is a right to be meaningfully heard, but its minimum requirements depend on what is fair in a particular context." In re Det. of Stout, 159 Wash.2d 357, 370, 150 P.3d 86 (2007) (citing Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). To determine what procedural due process requires in a particular context, we employ the Mathews test, balancing three factors: "(1) the private interest affected, (2) the risk of erroneous deprivation of that interest through existing procedures and the probable value, if any, of additional procedural safeguards, and (3) the governmental interest, including costs and administrative burdens of additional procedures." Stout, 159 Wash.2d at 370, 150 P.3d 86 (citing Mathews, 424 U.S. at 335, 96 S.Ct. 893).
¶ 21 Whether a respondent in civil SVP commitment proceedings must be competent to satisfy procedural due process requirements is a matter of first impression. As an initial matter, we note that the parties' arguments do not persuade us that our analysis in *401 Greenwood controls. In Greenwood, we considered whether RCW 10.77.050's prohibition on trying and convicting incompetent criminal defendants applied to RCW 71.09.060(2) SVP commitment proceedings. 130 Wash. App. at 286, 122 P.3d 747. We held that RCW 10.77.050 did not apply to the RCW 71.09.060(2) SVP hearing because SVP proceedings are civil and not criminal in nature. Greenwood, 130 Wash.App. at 286. The State insists that the Greenwood analysis controls here, believing that we held that incompetency during any SVP proceeding does not violate due process. But the State overlooks our statement in Greenwood that "Greenwood does not argue that an individual has a general right to competency at his or her civil commitment trial, we need not address that issue." 130 Wash.App. at 286 (emphasis added). Accordingly, Greenwood is not dispositive of the issues raised in the present case.
¶ 22 The State also suggests that the plain language of former RCW 71.09.060(2) (2001) indicates that a respondent does not have a general competency right in SVP civil commitment hearings. Former RCW 71.09.060(2) relates to an SVP bench hearing where the trial court must determine whether the respondent committed the predicate sexually violent offense when he or she was incompetent to stand trial in a criminal proceeding. Accordingly, former RCW 71.09.060(2) explicitly relates only to whether the requisite predicate offense to qualify as an SVP exists. This statutory provision does not address a respondent's right to competency during any other SVP proceedings.
¶ 23 Here, a review and weighing of the Mathews factors indicates that there is no right to competency during SVP civil commitment proceedings. The first factor, regarding Morgan's private interests at stake, clearly weighs in favor of Morgan as his civil commitment deprives him of significant liberty interests. Addington, 441 U.S. at 425, 99 S.Ct. 1804. But the remaining Mathews factors weigh in favor of the State.
¶ 24 For the second factor, "the risk of erroneous deprivation of [private] interest[s] through existing procedures and the probable value, if any, of additional procedural safeguards," there were no additional safeguards that could have been put into place that would have minimized or prevented an erroneous deprivation of Morgan's rights. Stout, 159 Wash.2d at 370, 150 P.3d 86. Here, Morgan attended the civil commitment trial and had counsel vehemently defending his rights.
¶ 25 We previously addressed an argument similar to Morgan's that his right to assist his counsel at his civil commitment hearing implies a right to competency. In In re Det. of Ransleben, 135 Wash.App. 535, 540, 144 P.3d 397 (2006), review denied, 161 Wash.2d 1021, 172 P.3d 360 (2007), we considered whether a respondent's statutory right to assistance of counsel in an SVP RCW 71.09.060(2) bench trial, which is held to determine the respondent's culpability for the necessary predicate sexually violent offense when the respondent was incompetent to stand trial in a criminal proceeding, included an implied right to competency. See also Stout, 159 Wash.2d at 376, 150 P.3d 86 (citing RCW 71.09.060(2) and stating, "An incompetent SVP detainee has not yet stood trial for the underlying criminal offense that predicates the SVP petition against him."). Ransleben argued that his right to counsel was meaningless if he was not competent and able to assist his counsel. Ransleben, 135 Wash.App. at 540, 144 P.3d 397. We held that RCW 71.09.060(2)'s plain language shows there is not a competency right at an RCW 71.09.060(2) hearing. Ransleben, 135 Wash.App. at 540, 144 P.3d 397. Even though the Ransleben court's decision concerned an RCW 71.09.060(2) hearing and a statutory analysis, the reasoning analogizes well to other aspects of the SVP civil commitment process. Accordingly, we extend the reasoning in Ransleben to other SVP proceedings.[7]
*402 ¶ 26 The third Mathews factor, "the governmental interest, including costs and administrative burdens of additional procedures," also weighs heavily in the State's favor. Stout, 159 Wash.2d at 370, 150 P.3d 86. The State has a strong interest in detaining "mentally unstable individuals who present a danger to the public." United States v. Salerno, 481 U.S. 739, 748-49, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Moreover, our Supreme Court has held that "it is irrefutable that the State has a compelling interest both in treating sex predators and protecting society from their actions." In re Pers. Restraint of Young, 122 Wash.2d 1, 26, 857 P.2d 989 (1993).
¶ 27 Accordingly, the Mathews factors weigh in favor of the State. We hold that due process does not require that a respondent be competent during any SVP proceedings, and Morgan's procedural due process argument fails.
¶ 28 Our analysis and holding mirrors that of the California Supreme Court in Moore v. Superior Court, 50 Cal.4th 802, 114 Cal. Rptr.3d 199, 237 P.3d 530 (2010). In Moore, the California Supreme Court applied its four-factor procedural due process test, including the three Mathews factors, and held that "due process does not require mental competence on the part of someone undergoing a commitment or recommitment trial under the [Sexually Violent Predator Act (SVPA), Cal. Welf. & Inst.Code § 6600]." Moore, 50 Cal.4th at 819, 829, 114 Cal. Rptr.3d 199, 237 P.3d 530. In particular, the court reasoned that
[t]he state's interest in enforcing these procedures, and in protecting the public, would be substantially impaired if an alleged SVP could claim, based on his diagnosed mental disorders, that he was too incompetent to undergo a trial leading to such targeted confinement and treatment. Indeed, as the exhibits supporting defendant's writ petition suggest, we can reasonably assume that significant potential overlap exists between those mental disorders that qualify someone for commitment as an SVP, on the one hand, and those that produce an inability to comprehend the proceedings or assist in one's defense on the other.... To allow anyone and everyone in this situation to seek a competence determination could require unknown numbers, possibly scores, of SVP commitment trials to be stayed indefinitely, and perhaps permanently, unless and until competence was restored under circumstances not involving confinement and treatment under the SVPA. Such concerns weigh heavily, and in fact dispositively, against recognition of a due process right of this kind.
Moore, 50 Cal.4th at 825-26, 114 Cal.Rptr.3d 199, 237 P.3d 530.
¶ 29 The Moore court's reasoning highlights the tension between Morgan's claim to competency and the SVP civil commitment requirements. Namely, SVP civil commitment requires the existence of a mental illness, but is there a point where an individual becomes too mentally ill that he is incompetent and cannot be civilly committed? Indeed, there are likely some situations in which a person who is convicted of a sexually violent offense, and then becomes incompetent, might never regain competency for a civil commitment proceeding. We resolve this tension in a similar manner as the Moore court discerning no due process violations when a respondent is not competent during SVP proceedings.[8]
*403 ¶ 30 Finally, of the other foreign jurisdiction cases the parties discussed, only one warrants further analysis. In re Commitment of Branch, 890 So.2d 322 (Fla.Dist.Ct. App.2004), concerns a related legal question, but the case is factually distinguishable. Branch, who also had a court-appointed GAL, raised the same challenge as Morgan. Branch, 890 So.2d. at 324. The Branch court held that Branch's due process rights were violated because the State's evidence of his prior bad acts was rooted in hearsay and not based on prior convictions. 890 So.2d at 327-28. The Branch court specifically stated that it did not hold that every person in a civil commitment proceeding had a general competency right during SVP proceedings. 890 So.2d at 329. Instead, the Branch court held only that there is a right to competency in civil commitment hearings when the state is relying on hearsay evidence to prove requisite prior bad acts. 890 So.2d at 329. Here, proof of Morgan's predicate offense is a judgment and sentence based on a guilty plea he entered when presumably he was competent. Unlike in Branch, the question before Morgan's civil commitment jury was not whether he performed the predicate offense. Instead, Morgan's civil commitment jury evaluated his then current mental state to decide whether treatment or confinement was appropriate and whether he is a danger to the community unless so confined. Accordingly, Branch is not instructive in resolving the issue.

INVOLUNTARY MEDICATION DURING THE PROCEEDINGS
¶ 31 Next, Morgan argues that the forced medication of antipsychotic drugs during his civil commitment hearing violated his due process rights. Specifically, he challenges the trial court's decision to force medication without identifying a medical necessity or a compelling government interest and in spite of a psychiatric evaluation stating the medication may not be in his best interests. See Sell v. United States, 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003); Riggins v. Nevada, 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992); Washington v. Harper, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). But Morgan has failed to preserve this error for review in this direct appeal.
¶ 32 As the party seeking review, Morgan has the burden to perfect the record so that, as the reviewing court, we have all the evidence relevant to the issues presented before us. RAP 9.2(b); Bulzomi v. Dep't of Labor & Indus., 72 Wash.App. 522, 525, 864 P.2d 996 (1994) (citing State v. Vazquez, 66 Wash.App. 573, 583, 832 P.2d 883 (1992)). An insufficient appellate record precludes review of the alleged errors. Bulzomi, 72 Wash.App. at 525, 864 P.2d 996 (citing Allemeier v. Univ. of Wash., 42 Wash.App. 465, 472-73, 712 P.2d 306 (1985), review denied, 105 Wash.2d 1014, 1986 WL 421070 (1986)).
¶ 33 Here, the record does not clearly establish that Morgan was forcibly medicated during his SVP trial. The trial court entered a forcible medication order in December 2006. Morgan's SVP trial did not begin until August 2008. The only evidence in the record that Morgan took any medication during his SVP proceedings is the trial court's statement, near the end of trial, to check and "make certain that Mr. Morgan has taken his medications that have been court ordered." 4 RP at 582. At oral argument, the parties discussed incorrect inferences from trial testimony and the existence of several documents, which are not in the record on review, that allegedly support Morgan's allegations that these trial medications were forcibly taken.[9] We cannot consider matters or evidence outside the record in a direct appeal. RAP 9.2(b); State v. McFarland, 127 Wash.2d 322, 338 n. 5, 899 P.2d 1251 (1995).
¶ 34 Morgan suggests that we can presume that he was forcibly medicated during his SVP trial because of the plain language of the trial court's December 2006 order, which *404 it never rescinded. We disagree. Even if Morgan forcibly took medication in December 2006, this fact alone does not establish that he still forcibly took medication in August 2008. Morgan may have realized the benefits of the medications in the intervening time and voluntarily taken them in August 2008. Dr. Judd's July 22, 2004 report included language suggesting that, in 2004, Morgan willingly complied with his medication treatment to "minimize the probability of [an SVP petition] filing" despite believing that he did not need to take antipsychotic medications and that they were not helping him. CP at 31. Thus, evidence exists in the record that Morgan has previously voluntarily, if reluctantly, taken ordered medications to improve his legal position. We will not engage in a speculative analysis and deny further review of this issue in this direct appeal.

PARAPHILIA NOS (NONCONSENT) DIAGNOSIS VALIDITY
¶ 35 Last, Morgan argues that the trial court erred by admitting a paraphilia NOS (nonconsent) diagnosis because that diagnosis has not gained general acceptance among the relevant scientific community as a basis for involuntary civil commitment. The State argues that Morgan has waived this argument because he failed to raise a Frye[10] objection below. In addition, the State points out that Washington courts frequently recognize paraphilia NOS (nonconsent) as a valid diagnosis eligible for use in civil commitment proceedings. We agree with the State.
¶ 36 We do not consider an issue raised for the first time on appeal unless it is a manifest error affecting a constitutional right. RAP 2.5(a)(3). Division One of this court rejected an argument identical to Morgan's in In re Detention of Post, 145 Wash.App. 728, 754-56, 187 P.3d 803 (2008), aff'd on other grounds, 170 Wash.2d 302, 241 P.3d 1234 (2010). Post argued for the first time on appeal that the "paraphilia NOS, nonconsent or rape" diagnosis resulting in his SVP civil commitment was "not based on sound scientific principles and, thus, ... admission of evidence of such a diagnosis violated his right to substantive due process as addressed in Kansas v. Crane, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002)." Post, 145 Wash.App. at 754-55, 187 P.3d 803. Division One rejected Post's argument, holding that, "Post improperly attempts to transform that which should have been raised as an evidentiary challenge in the trial court into a question of constitutional significance on appeal." Post, 145 Wash.App. at 755, 187 P.3d 803. The court noted that Post attempted to "sidestep the fact that he did not seek a Frye hearing in the trial court," and held that he "thus, has not preserved an evidentiary challenge for review." Post, 145 Wash.App. at 755-56, 187 P.3d 803 (footnote omitted).
¶ 37 Similarly, Morgan never objected to the testimony about the paraphilia NOS (nonconsent) diagnosis or challenged its admissibility at trial. He also never sought a Frye evidentiary hearing on the diagnosis. Like Post, Morgan is improperly attempting to recast his failure to raise an evidentiary challenge at trial as a manifest constitutional issue that he can challenge for the first time on appeal. We hold that Morgan did not preserve his Frye challenge for appeal.[11]
¶ 38 Our opinion resolves the issues in this case with two primary holdings. First, an individual's right to assist counsel and right to a public trial are not violated when a trial court holds a chambers meeting addressing purely legal and ministerial matters. Second, due process does not require that a respondent be competent during any SVP proceeding. In accordance with this opinion, we affirm.
We concur: WORSWICK, A.C.J., and WILLIAMS, J.P.T.
NOTES
[1] Morgan was charged as an adult for first degree child molestation after the juvenile court declined jurisdiction.
[2] On August 6, 2008, Morgan formally withdrew his objection to moving forward with his commitment proceedings despite his incompetency.
[3] At the meeting, the trial court did say, "[I]t sounds that [sic] basically all we're simply doing here is making sure we have the background or balancing in to order the medication. Almost like it's a foregone conclusion but I would like some medical matters taken care of first, okay?" RP (Aug. 30, 2006) at 32 (emphasis added). Although the trial court's statement implied that it would likely grant the forced medication motion after receiving all the necessary information, importantly, the trial court did not render a final written decision on this issue until December 6, 2006. As our Supreme Court previously noted, "[A] trial judge's oral decision is no more than a verbal expression of [its] informal opinion at that time. It is necessarily subject to further study and consideration, and may be altered, modified, or completely abandoned. It has no final or binding effect, unless formally incorporated into the findings, conclusions, and judgment." Ferree v. Doric Co., 62 Wash.2d 561, 566-67, 383 P.2d 900 (1963) (emphasis added); see also State v. Dailey, 93 Wash.2d 454, 458-59, 610 P.2d 357 (1980) (discussing Ferree and concluding that it is the "written decision of a trial court [that] is considered the court's `ultimate understanding' of the issue presented."). Accordingly, to the extent the trial court's statement constituted an oral ruling on the forced medication motion, which we do not believe it does, it was a nonbinding informal ruling that the trial court explicitly stated was subject to further consideration.
[4] In State v. Wise, 148 Wash.App. 425, 442-43, 200 P.3d 266 (2009), review granted, 170 Wash.2d 1009, 236 P.3d 207 (2010), we held that a criminal defendant lacked third party standing to assert a violation of article I, section 10 on behalf of the public. Division One of this court recently declined to follow our third party standing analysis on this issue in In re Det. of Ticeson, 159 Wash.App. 374, 381-82, 246 P.3d 550 (2011). We note only that if the Ticeson court is correct that criminal defendants and/or SVP committees have standing to raise article I, section 10 violations on behalf of the public, then they must also have the ability to waive the public's open trial rights. But our Supreme Court appears to have ruled that defendants do not have the right to waive the public's open trial rights. State v. Strode, 167 Wash.2d 222, 229-30, 217 P.3d 310 (2009) (Alexander, C.J., with three justices concurring and two justices concurring in result).
[5] D.F.F. concerned the closure of mental health proceedings under ch. 71.05 RCW. Division One of this court declared Mental Proceedings Rule (MPR) 1.3 unconstitutional because it categorically precluded court closures based on an analysis previously articulated by our Supreme Court. D.F.F., 144 Wash.App. at 225-26, 183 P.3d 302. Our Supreme Court heard oral argument in D.F.F. (No. 81687-5) on September 15, 2009, and has not issued its decision as of the date of this opinion.
[6] In In re Det. of McCuistion, 169 Wash.2d 633, 238 P.3d 1147 (2010), recons. granted by order of the Supreme Court, No. 81644-1, Feb. 9, 2011, our Supreme Court vigorously debated the appropriate due process analysis for questions involving SVP constitutional right claims. The McCuistion majority stated that

[t]he "procedure" required under a constitutionally valid SVP statute reflects substantive limits on the power of the legislature to restrict an individual's fundamental rights.... [T]he question is not what procedures are required under a balance of competing interests, but rather whether the procedures set forth in the statute are narrowly tailored to meet the State's compelling interest in continuing to confine mentally ill and dangerous persons. This is and always has been a question of substantive due process.
169 Wash.2d at 638 n. 1, 238 P.3d 1147 (citation omitted). But the McCuistion dissent asserted that a procedural due process analysis applies in SVP challenges where the question involves the adequacy of procedural safeguards and distinguished substantive due process violations as those prohibiting government actions "`regardless of the fairness of the procedures used to implement them.'" 169 Wash.2d at 657, 238 P.3d 1147 (Owens, J., dissenting) (internal quotation marks omitted) (quoting In re Pers. Restraint of Bush, 164 Wash.2d 697, 706, 193 P.3d 103 (2008)).
Here, Morgan couches his due process claim as a violation of his "opportunity to be heard" (i.e., his incompetency prevented him from participating and being heard during his commitment hearing because of his inability to help his attorney), and we apply procedural due process principles.
[7] Related to the second Mathews factor, we note an additional procedural safeguard that the trial court put into place in this case. The trial court appointed a GAL to represent Morgan's "best interests" and to "make decisions in this matter related to trial strategy." CP at 63-64. And pursuant to RCW 4.08.060, a GAL has complete statutory authority to represent an incapacitated party's interests. In re Dill, 60 Wash.2d 148, 150, 372 P.2d 541 (1962). Although our holding that a respondent does not have a competency right during SVP proceedings suggests the appointment of a GAL is not necessary, we approve of the trial court's decision to appoint a GAL in this case, where the relevant issue was involuntary medication, as the trial court sought to use all available tools at its disposal to ensure the protection of Morgan's rights.
[8] We note a distinction between an individual's rights during criminal trials that precede SVP petitions and the civil SVP proceedings. In Washington, defendants have a statutory right to be competent during criminal proceedings. RCW 10.77.050. Morgan does not allege a violation of his competency rights in the criminal proceedings underlying this case where he pleaded guilty to child molestation, a serious violent offense that later formed the basis for the State to file a petition for involuntary SVP civil commitment. That a defendant has a right to competency in criminal proceedings does not control whether such a right exists in a civil proceeding.
[9] The State referenced SCC documents from 2006 to 2008 that outlined Morgan's medication history during that time period. These documents are not in the record on review. Morgan's counsel discussed Dr. Wollert's trial testimony, asserting that he met with Morgan a month prior to the SVP jury trial and that Morgan was forcibly taking medication at that time. Our review of Wollert's references to a July 2008 meeting revealed that Wollert said Morgan was on medications but Wollert did not indicate whether the medications were forcibly or voluntarily taken.
[10] Frye v. United States, 54 App. D.C. 46, 293 F. 1013 (1923).
[11] We note that even if we did consider the merits of Morgan's Frye challenge, Washington courts have consistently upheld the use of paraphilia NOS in numerous civil commitment proceedings. See, e.g., Post, 145 Wash.App. at 757 n. 18, 187 P.3d 803 (listing 10 Washington Supreme Court and Court of Appeals decisions upholding civil commitments based on a diagnosis of paraphilia NOS rape or nonconsent).