FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 APR 29 AM 10: 03



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67843-4-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES R. HOLMES, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: April 29, 2013 |

Cox, J.—James Holmes appeals his convictions for robbery, burglary, and assault, arguing that we should abandon Washington's long-standing test for identification procedures in favor of a different test used in several other states. Because we are bound by Washington State Supreme Court decisions adopting the test Holmes seeks to abandon, and because we decline to exercise any inherent authority we may have to entertain the issue, we conclude Holmes' argument must be made to the state supreme court. We also conclude that Holmes' sentence enhancements are supported by sufficient evidence and that his remaining arguments, including his pro se claims, lack merit. We affirm.

In August 2007, police investigated a report that several armed men unlawfully entered the home of Jessica Brevig and Jay Shelton and robbed and assaulted them and their guests, Bryan Johnstone and Jennifer Tame.

That fall, Brevig and Shelton viewed two photo montages of possible suspects, but did not identify anyone.

In January 2008, police showed two montages to Johnstone, but he also could not identify anyone.

In June 2009, police learned that DNA found on a glove fragment at the crime scene matched Holmes' DNA.

In February 2010, police prepared a montage that included a photo of Holmes wearing wire framed glasses. Two other photos in the montage depicted men wearing wire framed glasses. The other three photos were of men without glasses. Brevig did not select any photo from the montage. Shelton, however, picked Holmes' photo.

In August 2010, the State charged Holmes with one count of first degree robbery, one count of first degree burglary, and four counts of second degree assault, all with firearm allegations.

Prior to trial, Holmes moved to suppress the montage identification and any in-court identifications on the ground that they were the product of an impermissibly suggestive procedure. Dr. Jennifer Devenport, a psychology professor and expert on memory and eyewitness identification, testified at the suppression hearing. She concluded the montage procedure was suggestive and created a likelihood of misidentification because only three of six photos were of men wearing glasses, Holmes was the only person with a tattoo, the witnesses were told before viewing the montage that police had obtained a DNA match, the photos were presented simultaneously rather than sequentially, and the presenting detective was aware of which photo was the suspect. Dr.

Devenport also identified several factors that could have affected the accuracy of the witnesses' memory, including the stress and confusion of the robbery, the limited ability of the witness to view the suspects during the robbery, the presence of an apparent weapon, the difference in race between the suspects and the witness, the poor lighting, the suspects' use of disguises, and the two-and-a-half-year delay between the robbery and the photo montage procedure.

The court concluded the montage was suggestive, but not impermissibly or unnecessarily so, and denied the motion to suppress.

At trial, the State's evidence established that on August 21, 2007, three men, including Holmes, approached the Everett home of Brevig and Shelton. They encountered Shelton outside the house. One of the men stuck a gun in Shelton's stomach and threatened to kill him if he moved. The men then pushed Shelton inside the house.

Once inside, a man with a gun pushed Shelton and Brevig to the floor and threatened to kill them. One of the other men demanded to know if anyone else was in the house. Brevig told them her sister, Jennifer Tame, and her sister's boyfriend, Bryan Johnstone, were downstairs.

Two men went downstairs. While holding a gun, one of them ordered Tame and Johnstone upstairs. The men then had all four victims sit on a sofa. They demanded to know where money and keys to a safe were. One of them took Brevig's wallet and keys out of her purse. One of the men with a gun took Tame downstairs and then took her wallet, keys, and cell phone. In an attempt to

coerce them into revealing the location of the safe key, the men put a gun in Brevig's mouth and held a gun to Shelton's head. One of the men repeatedly struck Shelton in the head with the butt of a gun. One of the intruders struck Johnstone with what appeared to be a gun.

The men considered setting the victims on fire with gasoline they found in the garage. Eventually, they tied the victims up with electrical cords and left. After untying himself, Shelton went to a neighbor's house and called police. Johnstone later discovered that approximately $40,000 in cash of his was missing.

Shelton identified Holmes in court as one of the robbers. None of the other eyewitnesses identified Holmes.

The jury found Holmes guilty of first degree robbery, first degree burglary, and second degree assault of Shelton and Brevig. The jury was unable to agree on the other two assault charges. By special verdicts, the jury found that Holmes was armed with a firearm during each of the offenses. Holmes appeals.

*Identification*

For the first time on appeal, Holmes contends this court should abandon Washington's long-standing test for the admissibility of eyewitness identifications[1] and adopt a new test "that better deters suggestive police practices and guards against the admission of unreliable evidence at trial." He asks that we remand for the trial court to apply the proposed test to the montage identification admitted

---

[1] State v. Vaughn, 101 Wn.2d 604, 610-11, 682 P.2d 878 (1984); State v. Vickers, 148 Wn.2d 91, 118, 59 P.3d 58 (2002).

4

at his trial. He acknowledges that our supreme court adopted,[2] and has long

adhered to, the federal test set forth in Neil v. Biggers[3] and Manson v.

Brathwaite.[4] He also does not dispute that this court is bound by decisions of our

supreme court.[5] Nevertheless, he urges us to exercise our inherent supervisory

power to create rules furthering sound judicial practice.[6] We decline to do so.

We need not consider issues raised for the first time on appeal.[7]

Moreover, Holmes' argument lacks a state constitutional analysis that could be

helpful in determining whether Washington should adopt the test used in a

minority of other states. In short, and in the absence of any challenge to the trial

court's application of Biggers and Brathwaite, we do not address these

arguments further.[8]

### Firearm Enhancements

Holmes next contends the evidence is insufficient to support the jury's

special verdicts that he was armed with a firearm during the commission of the

offenses. We disagree.

Evidence is sufficient to sustain an enhancement if, when viewed in a light

most favorable to the State, it permits a rational trier of fact to find the elements

---

[2] Note 1, supra.
[3] 409 U.S. 188, 93 S. Ct. 375, 34 L.Ed.2d 401 (1972).
[4] 432 U.S. 98, 97 S. Ct. 2243, 53 L.Ed.2d 140 (1977).
[5] State v. Schmitt, 124 Wn.2d 662, 669 n.11, 102 P.3d 856 (2004).
[6] See State v. Martin, 171 Wn.2d 521, 537, 252 P.3d 872 (2011).
[7] RAP 2.5(a); In re Detention of Morgan, 161 Wn. App. 66, 85-86, 253 P.3d 394, 404 (2011).
[8] See State v. Allen, 161 Wn. App. 727, 745, 756, 255 P.3d 784 (2011) (where state supreme court had previously ruled on the subject, issue of whether cross-racial identification instruction should be required in light of modern research was for the supreme court, not the court of appeals, to decide).

5

of the enhancement beyond a reasonable doubt.[9] A defendant challenging the sufficiency of the evidence admits the truth of the evidence and all rational inferences that may be drawn from it.[10] Circumstantial and direct evidence are equally probative, and we defer to the trier of fact on conflicting testimony, witness credibility, and the persuasiveness of the evidence."[11]

To enhance Holmes' sentence in this case, the State had the burden of proving that he or an accomplice was armed during commission of the crime with a "firearm" -- *i.e.*, "a weapon or device from which a projectile may be fired by an explosive such as gunpowder."[12] Holmes contends this burden required the State to prove the firearms were "operable," even though the statute does not use that word.[13] The State disagrees, arguing that it was sufficient to show that Holmes or an accomplice used a real gun.[14]

We need not resolve the parties' disagreement regarding the State's burden, because even assuming proof of operability is required, we have

---

[9] State v. McKee, 141 Wn. App. 22, 30, 167 P.3d 575 (2007).

[10] State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).

[11] State v. Raleigh, 157 Wn. App. 728, 736-37, 238 P.3d 1211 (2010), review denied, 170 Wn.2d 1029 (2011).

[12] Instruction 20, CP 75. RCW 9.41.010(7).

[13] See, e.g., State v. Pam, 98 Wn.2d 748, 659 P.2d 454 (1983); State v. Recuenco, 163 Wn.2d 428, 437, 180 P.3d 1276 (2008) ("We have held that a jury must be presented with sufficient evidence to find a firearm operable under this definition in order to uphold the enhancement."); State v. Pierce, 155 Wn. App. 701, 714 n.11, 230 P.3d 237 (2010) (Where the firearm is not presented as evidence, there must be "other evidence of operability, such as bullets found, gunshots heard, or muzzle flashes.").

[14] See Raleigh, 157 Wn. App. at 734–35 (firearm need not be operable during commission of crime to constitute a firearm; statement in Recuenco is dicta), review denied, 170 Wn.2d 1029 (2011); State v. Padilla, 95 Wn. App. 531, 535, 978 P.2d 1113 ("a disassembled firearm that can be rendered operational with reasonable effort and within a reasonable time period is a firearm"), review denied, 139 Wn.2d 1003 (1999); State v. Faust, 93 Wn. App. 373, 380, 967 P.2d 1284 (1998) (language in Pam on operability refers to the difference between a toy gun and a gun in fact; a gun incapable of being fired due to a mechanical defect is still a firearm).

previously held that operability may be inferred from evidence showing a threat to use a real gun. In State v. Mathe, 35 Wn. App. 572, 581–82, 668 P.2d 599 (1983), aff'd, 102 Wn.2d 537, 688 P.2d 859 (1984), we held that the State proved the defendant "used a real and operable gun" with testimony of two robbery eyewitnesses who described the guns and the defendant's express or implied threat to use them.[15] Similarly, in State v. Bowman, 36 Wn. App. 798, 803, 678 P.2d 1273, review denied, 101 Wn.2d 1015 (1984), eyewitness testimony describing a "real" gun and recounting a threat to use it was sufficient to establish "the existence of a real, operable gun *in fact*."[16]

Here, all of the victims testified that they were threatened and/or assaulted with guns. Shelton, who had experience with guns, testified that a man pulled out "a slide top type Glock gun," put it in his stomach, and told him not to move or he would kill him. One of the men put a gun in Brevig's mouth and told Shelton he was going to shoot her if Shelton did not give them keys to a safe. When Shelton said he did not have the keys, the man then put the gun against Shelton's head and told Brevig he would shoot Shelton if she did not give them the keys. Shelton described the gun as a "hard metal gun" that "felt absolutely real." Brevig also saw the men handling a rifle and someone hit Shelton in the

---

[15] Mathe, 35 Wn. App. at 581-82.

[16] (Court's emphasis); see also Faust, 93 Wn. App. at 380 ("eyewitness testimony to a real gun that is neither discharged nor recovered is sufficient to support deadly weapons and/or firearms penalty enhancements"); State v. Goforth, 33 Wn. App. 405, 412, 655 P.2d 714 (1982) (evidence was sufficient to support inference that "gun was operable in fact" where witnesses who were familiar with shotguns testified that the defendant used a real shotgun); McKee, 141 Wn. App. at 29-32 (evidence was sufficient to support firearm enhancement given victim's description of the weight and feel of the gun, the way in which defendant wielded it, and evidence that defendant had a real gun and had access to other guns).

head with the butt of a gun. Tame and Johnstone testified that when the men first entered, one of them held a gun as he ordered them to go upstairs. Tame also testified that one of the men threatened to shoot her dog.

Viewed in a light most favorable to the State, this evidence is sufficient to support an inference that Holmes or an accomplice was armed with a firearm during each of the offenses.

*Offender Score*

Holmes next contends the trial court erred in including a prior Texas conviction for possession of a controlled substance in his offender score. He argues that the State failed to carry its burden of proving that the Texas conviction was comparable to a Washington felony. We review de novo the calculation of an offender score.[17]

Holmes contends the controlled substance could have been marijuana and, if so, the State failed to prove comparability because possession of marijuana is a felony in Washington only if the defendant possesses more than forty grams and the State did not prove the amount Holmes possessed. But as the State points out, the record demonstrates that Holmes' conviction was not for possession of marijuana.[18] Accordingly, this argument fails.

---

[17] State v. Parker, 132 Wn.2d 182, 189, 937 P.2d 575 (1997).
[18] See Clerk's Papers at 246; Exhibit 1, Sentencing (charged Texas Code section did not include marijuana); Exhibit 8, Motion to Suppress, pg. 21 (listing case No. F0854671 as "POSS CS COCAINE").

*Statement of Additional Grounds*

Holmes raises additional arguments in his pro se statement of additional grounds for review. Most of these arguments were either raised by Holmes' counsel on appeal[19] or involve witness credibility and the persuasiveness of the evidence. These matters are solely for the trier of fact and are beyond the scope of our review.[20]

Holmes also claims the jury was not properly instructed on the standard of proof for the firearm enhancements. He is mistaken. Instruction 20 stated that "[f]or purposes of a special verdict, the State must prove beyond a reasonable doubt that the defendant or an accomplice . . . was armed with a firearm . . . ."[21] Instruction 23 also stated that "[i]n order to answer the special verdict forms 'yes,' you must unanimously be satisfied beyond a reasonable doubt that 'yes' is the correct answer."[22]

We affirm the judgment and sentence.

_____Cox, J._____

WE CONCUR:

_____Leach, C.J._____          _____Becker, J._____

---

[19] Holmes' argument concerning the sufficiency of evidence supporting the firearm enhancements is raised by his counsel and addressed above.
[20] Note 11, supra.
[21] Clerk's Papers at 75.
[22] Clerk's Papers at 79.